**Mervyn M. MERTZ, Appellee,**

v.

**JoAnn ROTT, Julie Rott Kessel, National Farmers Union Property and Casualty Company, Appellants.**

No. 91–2120.

United States Court of Appeals, Eighth Circuit.

Submitted Dec. 11, 1991.

Decided Jan. 31, 1992.

Marnell W. Ringsak, Bismarck, N.D., argued, for appellants.

LaRoy Baird III, Bismarck, N.D., argued, for appellee.

Before JOHN R. GIBSON, Circuit Judge, FRIEDMAN *, Senior Circuit Judge, and MAGILL, Circuit Judge.

FRIEDMAN, Senior Circuit Judge.

The question in this appeal from the United States District Court for the District of North Dakota is whether the bankruptcy court properly denied a discharge in a Chapter Seven bankruptcy proceeding because the debtor failed to list in the schedules to his bankruptcy petition state tax refunds that he anticipated receiving and did receive. The district court reversed the denial of the discharge on the ground that the tax refunds were not "material" because they were exempt assets. We reverse the district court.

I. A. On February 20, 1990, the appellee Mertz filed a petition under Chapter Seven of the Bankruptcy Act, 11 U.S.C. §§ 701–766 (1988). On March 8, 1990, Mertz filed his schedules, dated March 7, 1990, in which, in response to the question,

---

* Daniel M. Friedman, of the United States Court of Appeals for the Federal Circuit, sitting by designation.

"[t]o what tax refunds (income or other), if any, are you, or may you be, entitled?", he responded, for "1989: None Anticipated."

At the first meeting of creditors, held on March 23, 1990, Mertz stated under oath, in response to the question whether he was "expecting a tax refund from tax year 1989," "I think so, yeah," but that he had not yet filed the refund applications. He testified that he had received a $400 tax refund for 1988, which he had shown on his schedule; this referred to a federal tax refund. He also stated that he was "filing" his tax returns "now," and that he would file the returns "[t]hrough ... New York."

On May 18, 1990, Mertz filed amended schedules, in which he stated that he was entitled to a 1989 (federal) tax refund of $1641. He also listed this tax refund on another schedule showing exempt property. Mertz further amended his schedules on June 20, 1990. Although that schedule made various changes in his other assets and liabilities, it did not change the 1989 reported federal tax refund of $1641.

At an adversary hearing held after Mertz filed his second amended schedule, see below, Mertz for the first time stated that he also had received a New York state tax refund in 1990. The record shows that Mertz had signed on March 23, 1990—the same day as the first meeting of creditors—a New York State Income Tax Return, claiming a refund of $1358. He testified that he "believe[s]" he received the New York State tax refund in May 1990. He did not disclose the prospective and actual New York State refund in the three schedules he filed, or at the first meeting of creditors. Mertz testified that the reason he "did not disclose that pending tax refund at the first meeting of creditors" was "[j]ust oversight, I guess." He offered no explanation or justification for his failure to disclose the 1989 New York State tax refund on any of the three schedules he filed.

B. The appellants are the plaintiffs in a pending state court tort suit against Mertz resulting from an automobile collision. Trial of that suit was scheduled to begin the day after Mertz filed his bankruptcy petition, which he filed because of that suit.

After Mertz filed his second amended schedules in June 1990, the appellants filed in the bankruptcy court a complaint to deny Mertz a discharge, on the ground that in his petition and schedules Mertz had misstated and failed to disclose significant assets and income. Following the adversary hearing, at which Mertz testified, the bankruptcy court denied Mertz a discharge.

Ruling from the bench, the court found that on "three occasions" Mertz made a "false oath ... in that the debtor has had not one opportunity to make a correct statement regarding his 1989 tax return and refunds but has had three occasions, once on the original schedule and statement and on the later two amendments." The court "conclude[d] due to the numerous occasions the debtor has had in this case to make corrections and to set out truthful information that he omitted the information with the intent that it be omitted and with the intent that it not be discovered. As I stated, I do not regard any omission from statements of financial affairs or schedules to be trivial where it has any bearing on the existence or disposition of potential estate assets. Certainly the existence of a tax refund is that type of information."

The bankruptcy court subsequently filed written findings and conclusions.

The district court (C.J. Conmy) reversed and remanded the case to the bankruptcy court to enter a discharge order. The court held that "[t]he asset omitted from debtor's schedule [the New York State tax refund] had no effect on the estate or the creditors," because

all of the debtor's assets, including this refund, were exemptible. Debtor's failure to schedule the refund was therefore, immaterial. Based on a finding that, as a matter of law, a failure to list a $1,350. exempt asset is not material, the decision of the Bankruptcy Court is REVERSED....

II. Under 11 U.S.C. § 727(a) (1988), a debtor is entitled to a discharge unless

(4) the debtor knowingly and fraudulently, in or in connection with the case—(A) made a false oath or account.

■ For such a false oath or account to bar a discharge, the false statement must be "material." *In re Olson*, 916 F.2d 481, 484 (8th Cir.1990). In *Olson*, we quoted with approval the following standard of materiality announced in *In re Chalik*, 748 F.2d 616, 618 (11th Cir.1984): "The subject matter of a false oath is 'material,' and thus sufficient to bar discharge, if it bears a relationship to the bankrupt's business transactions or estate, or concerns the discovery of assets, business dealings, or the existence and disposition of his property." 916 F.2d at 484. *See also*, 4 Collier on Bankruptcy (Bankruptcy Code) § 727.04[1] at 727–59 n. 6a (15th ed. 1991).

■ Under this standard, Mertz's failure to disclose the New York State tax refunds he anticipated and subsequently received was material because it bore "a relationship to the bankrupt's ... estate" and concerned "the existence ... of his property." The tax refund was an asset of his estate that Mertz was required to disclose to his creditors. The amount involved—$1358—was not insubstantial.

Mertz' total fixed liability was $53,000 ($48,000 owed on the mortgage on his house and $5,000 owed on a credit card) and he had a contingent liability of $35,000 based on the appellants' tort suit against him. Apart from the federal and state tax refunds, his total assets as listed in his original schedule were $23,575 The state tax refund equalled 5.8 percent of those assets, 2.6 percent of the noncontingent liabilities and 1.5 percent of the total liabilities.

The district court's conclusion, which it deemed dispositive, that the state tax refund was exempt, did not establish that the nondisclosure of the refund was immaterial. Mertz was required to disclose the refund as part of his estate, and assert any exemption he might have. *See Payne v. Wood*, 775 F.2d 202, 204 (7th Cir.1985) ("Under the Bankruptcy Act, all property of the debtor becomes part of the estate available to satisfy the creditors' claims.

11 U.S.C. § 541(a). The debtor then may remove some of the property by claiming exemptions under 11 U.S.C. § 522(b)"), *cert. denied,* 475 U.S. 1085, 106 S.Ct. 1466, 89 L.Ed.2d 722 (1986). The creditors then would be able to evaluate the exemption claim, which involved the application of North Dakota law. As the bankruptcy court pointed out, "the petition, including schedules and statements, must be accurate and reliable, without the necessity of digging out and conducting independent examinations to get the facts." *See In re Mascolo*, 505 F.2d 274, 278 (1st Cir.1974) ("The successful functioning of the bankruptcy act hinges both upon the bankrupt's veracity and his willingness to make a full disclosure."). Indeed, had it not been for the adversary hearing, at which Mertz first revealed the state tax refund, the creditors might never have learned about it.

The proper procedure for Mertz to have followed to make an exemption claim for the state tax refund was what he did with respect to the federal tax refund: show it as an asset of the estate in the provision of the schedules dealing with tax refunds, and then list it on the schedule of exempt property. Once Mertz became entitled to, and did, receive the state tax refund after he filed his initial schedules, he was required to file a supplemental schedule listing that asset and, if he claimed the property was exempt to "claim the exemptions in the supplemental schedule." Bankruptcy Rule 1007(h). The district court's after-the-fact characterization of the state tax refund as exempt was not a valid ground for overturning the Bankruptcy court's denial of a discharge because of Mertz' failure to disclose the refund in his schedules.

The bankruptcy court concluded that Mertz' failure to disclose the state tax refund was done "with intent to omit and not report said asset." The district court did not reject that conclusion or question the underlying findings upon which it was based. A significant fact supporting that conclusion was that, as the bankruptcy court found, Mertz "has given three false oaths and has had not one opportunity, but three opportunities to correct any errors or

omissions." *See Williamson v. Fireman's Fund Ins. Co.,* 828 F.2d 249, 252 (4th Cir. 1987) ("It is significant that Williamson made not one false oath, but three....").

Mertz asserts that the non-disclosure was an "oversight" and not intentional. The only inadvertence Mertz claimed on the record, however, was non-disclosure at the first meeting of creditors. He did not state that the lack of disclosure in the schedules was inadvertent.

The judgment of the district court directing the bankruptcy court to enter a discharge order is reversed.