In re Dennis & Linda MARTIN, Debtors.

Sherry F. Chancellor, Trustee, Plaintiff,

v.

Dennis & Linda Martin, Defendants.

Bankruptcy No. 98–02382–PNS3. Adversary No. 99–80006.

United States Bankruptcy Court, N.D. Florida, Pensacola Division.

Aug. 23, 1999.

Sherry F. Chancellor, Pensacola, FL, pro se.

Amy Sliva, Pensacola, FL, for defendant.

### FINAL JUDGMENT

LEWIS M. KILLIAN, Jr., Bankruptcy Judge.

THIS MATTER came on for hearing on July 28, 1999 upon the complaint of the Trustee, Sherry F. Chancellor, seeking a denial of discharge pursuant to 11 U.S.C. §§ 727(a)(4), (a)(2)(A), (a)(2)(B) and attorney's fees. The Trustee withdrew her request for attorney's fees at the hearing. The Court, having heard the testimony of

the witnesses, arguments of counsel, and reviewed the pleadings and related documents submitted in the cause, determines that the Debtors have knowingly and fraudulently made false oaths in connection with the case. Having entered findings of fact and conclusions of law as required by Bankruptcy Rule 7052, it is hereby

ORDERED and ADJUDGED that the Debtors, Dennis and Linda Martin, be denied a discharge pursuant to 11 U.S.C. § 727(a)(4).

### MEMORANDUM OPINION

This matter is before the Court on the complaint of the Chapter 7 trustee, Sherry F. Chancellor. The Trustee's complaint asserts that the Debtors should be denied a discharge for filing false schedules. The complaint is based on 11 U.S.C. § 727(a)(4)(A) and claims that the Debtors knowingly and fraudulently made a false oath or account in connection with the administration of the case. The complaint also cites to 11 U.S.C. §§ 727(a)(2)(A), (B) as a basis for denying discharge. The Debtor Dennis Martin appeared and was represented by counsel; his wife and co-debtor, Linda Martin, did not appear. Having heard the testimony of the witnesses, arguments of counsel, and reviewed the pleadings and related documents submitted in the cause, I find that the Debtors knowingly and fraudulently made false oaths in connection with the case, and therefore, a denial of their discharge is appropriate pursuant to 11 U.S.C. § 727(a)(4).

The facts of this matter originate from a simple investigation performed by the Trustee into the Debtors' personal property. The Debtors filed their bankruptcy petition on November 2, 1998 and scheduled $2,455 in various household goods and furnishings. The Trustee was familiar with the Debtors' neighborhood and suspected that the property was worth much more, so she sent an appraiser, Gina Boyleston, to the Debtors' home.

Ms. Boyleston met with the Debtors at their home on January 26, 1999 and she appraised the Debtors' household goods to be worth $5,948.50. The Debtors claim that Ms. Boyleston's appraisal was inflated due to two bedroom sets found in the Debtors' home that belonged to their daughter. However, the parties have reached an agreement as to the valuation of the household goods. The Debtors amended their schedules to reflect the appraisal and they submitted a check for the overage to the Trustee.

More importantly, Ms. Boyleston inspected the Debtors' garage and serendipitously found Dennis Martin's 1970 Pontiac GTO (considered to be a desirable collectible) on blocks and under cover. Ms. Boyleston only intended to appraise the household goods; she is not experienced with appraising cars. The Debtors reported the car in their schedules as a "1970 Pontiac" in poor condition and worth only $200. Ms. Boyleston suspected it may be worth more, so she had her more experienced brother, Robert Boyleston, schedule a meeting with the Debtors. Mr. Boyleston inspected the car's exterior and found some minor dings, scratches, and rust. Under the hood, the car's spark plugs were disconnected and there was no battery. Martin told Mr. Boyleston that the car's engine froze up so, at that time, Mr. Boyleston did not attempt to start it. Mr. Boyleston estimated that, with some work, the car could be worth from $10,000 to $12,000. After his visit, Mr. Boyleston did some research and valued the car, without the repairs, at about $6,300. On the Trustee's instructions, and to Martin's great dismay, Mr. Boyleston took the car away to a bankruptcy warehouse. At the warehouse, Mr. Boyleston installed a new battery and inserted the Debtors' spark plugs. He tried starting the car and its engine turned over immediately, leading him to conclude that nothing that Martin stated about the car's condition was true. The car was eventually sold to a local dealer for $5,900.

The Debtors scheduled three vehicles as part of their personal property: a "1991 Chevrolet S–10 Blazer," "1995 Chevrolet S–10 Pickup," and a "1970 Pontiac" with no mention that it was a model GTO. The GTO was listed in "poor condition," "not running" and worth $200. It was also listed in the schedule of exempt property as worth $200, with Linda Martin claiming a $100 exemption as joint owner. This claimed exemption was removed in the amended schedules because the Debtors discovered that the title was not joint.

The Debtors do not contest that $200 is significantly below market value for a GTO. However, they claim they intended to report the car as worth $2,000 and the $200 listing was an error. As evidence of this assertion, the Debtors' attorney submitted her notes from her meeting with the Debtors. In Martin's handwriting, these notes reflect that the Debtors reported a "1970 Pontiac" worth $2,000 and in poor condition.

The Debtors claim that they did not knowingly undervalue their assets with the intent to mislead. Dennis Martin took the stand and testified that, at the time of the Boylestons' visits, the car had not been used for two or three years because it stopped running. He let the car sit for about six or eight months at one point and tried to start the car again, but could not because its engine was frozen. He removed the spark plugs, tried to lubricate the engine, and used a breaker bar to try to pry the engine loose but the engine still did not turn over. Martin testified that Mr. Boyleston was the first person to appraise the car. The Debtors hired two appraisers after the Boylestons' visits. The first one, Helen Brown–Galloway, an experienced household goods appraiser, valued the car at $2,000. The second one, Gerald Adcox, Jr., a dealer in new and used exclusive automobiles, valued it at $3,600. Both appraisals indicated that the car's engine was frozen up.

The Debtors amended their original schedule B to reflect these appraisals by increasing the value of the household goods from $2,455 to $5,005; increasing the value of the car from $200 to $3,600; decreasing the value of the checking account from $92 to $0, and unjustifiably decreasing the value of the 1995 S–10 Pickup from $11,000 to $495 (apparently because the truck was subject to a $10,506 lien). The net result of these changes in schedule B is that the Debtors decreased the value of their personal property from $17,747 to $13,100.

The Debtors also made changes to their original schedule C by increasing the claimed exemptions in the household goods from $1,965 to $2,000 and removing the claimed exemptions in the GTO, 1995 S–10 Pickup, and cash. The net result of these changes in schedule C is that the Debtors decreased their claimed exemptions from $3,594 to $3,000.

■ The policy of the Bankruptcy Code regarding exceptions to discharge was laid out by this court in *In re Hoflund,* 163 B.R. 879 (Bankr.N.D.Fla.1993).

> The fresh start afforded by the discharge of a debtor's personal liability for pre-petition debts is a central purpose of the Bankruptcy Code. Given its importance, actions to deny discharge under § 727 are construed strictly against the complaining party and liberally in favor of the debtor. By the same token, however, the Code's fresh start policy is reserved solely for "honest, but unfortunate" debtors. The elements of a § 727 discharge action must be demonstrated by a preponderance of the evidence by the moving party.

*Id.* at 882 (internal citations omitted).

■ Under § 727(a)(4)(a), if the debtor has knowingly and fraudulently made a false oath or account, his discharge will be denied. 11 U.S.C. § 727(a)(4)(a) (West 1999). As *Hoflund* illustrates, debtors get penalized for intentionally filing false schedules.

The exception to discharge is not meant to punish debtors for their mistakes or

inadvertence, but rather, for those debtors who attempt to deny the trustee and creditors reliable information relating to their financial condition or assets of the estate. Such intent may be inferred from the circumstances of the case.

*Hoflund,* 163 B.R. at 882–83 (citations omitted). In *Hoflund,* the debtor understated his income and omitted personal property from his schedules, justifying the denial of a discharge based on a false oath. *Id.* at 883. In the present case, the Debtors similarly undervalued their household goods. This led the Trustee to discover, by chance, that the car was undervalued as well.

Martin testified that he did not willfully undervalue the car and honestly believed it to be worth $2,000. Where the issue is intent, the Debtors' credibility must be measured against that of the movant. Martin's credibility was immediately put into doubt because his assertion that the car's engine was frozen was inconsistent with Mr. Boyleston's testimony that, with a fresh battery, the engine turned over immediately. The Debtors' case is also not aided by their carelessness in filling out the schedules. They could easily have read the title certificate of the GTO and discovered that Linda Martin is not on the title. Similarly, they could have performed a small amount of research to find out that the car is worth much more than $2,000.

Based on the evidence presented, the Debtors' actions appear worse than carelessness and tend towards evasiveness. The Debtors listed the car as a "1970 Pontiac," "not running," and in "poor condition." This description conjures up an image of an old, beat-up, worthless car, not a valuable collectible. The car is also suspiciously listed in the schedules and the Debtors' attorney's notes without a model whereas the models of their two trucks are listed. The Debtors thus consciously avoided allowing the court and their own attorney to know that the car was a collectible.

Although there is no evidence that Martin collects cars or is familiar with the collectible car market, the circumstantial evidence suggests that Martin knew or should have known the car was worth much more than $2,000. The 1970 Pontiac GTO was a highly popular "muscle" car that has achieved collectible status. Martin bought this car when it came out in 1970, first-hand, and has owned it ever since then. Aside from some minor scratches and a small dent, the car's exterior is in good shape. Martin stored the car upon blocks and under cover, but did not offer any mechanical reason why he did so. Martin may not know much about valuing cars, but he knows enough about them to keep one in good condition for 29 years, to lubricate the engine and try to pry it loose if it has frozen up, and how the car should be stored. It is thus difficult to believe that Martin did not know how valuable his car was. Based on the record in this case, I find that Martin knew his car was valuable, took good care of it, feigned ignorance of its true worth in order to try to keep it after bankruptcy, and lied to the appraisers regarding its condition. In the process, the Debtors threw a bone to this Court and made the appearance of satisfying the Code's requirements by amending their schedules after they had been caught. The Debtors may or may not have intentionally undervalued the car, but they have at the very least displayed a reckless disregard for the car's true value. This finding supports the conclusion that they acted with the knowledge and fraudulent intent necessary to deny a discharge under § 727(a)(4). *See Hoflund,* 163 B.R. at 883.

Section 727(a)(4) penalizes debtors for providing misleading information, but the Debtors' counsel suggests that the size of the lie should factor into the court's decision. This argument is without merit because in the Eleventh Circuit, debtors are denied discharge for falsely stating information even where it concerns worthless property. *See In re Chalik,* 748 F.2d

616, 618 (11th Cir.1984) (citing *Diorio v. Kreisler–Borg Construction Co.*, 407 F.2d 1330, 1330 (2d Cir.1969)). "The veracity of the bankrupt's statements is essential to the successful administration of the Bankruptcy Act." *Id.* (citing *Diorio*, 407 F.2d at 1331).

The Debtors' actions are particularly troubling upon a closer analysis of the schedules because, in the present case, the lie happens to be great. After totaling the Debtors' personal property and subtracting exemptions and secured claims as stated on the Debtors' original schedules, only $657.00 would be available for distribution by the Trustee.[1] In contrast, after the Debtors filed several amendments to their schedules to reflect the Trustee's appraisal of the personal property, $6,605.00 would be available.[2] This discrepancy is even greater when adding the extra $2,300 obtained from the car's sale. Denying discharge under § 727 was meant to be a strict punishment. Debtors who file a Chapter 7 case and intentionally undervalue property in order to maximize what they keep assume a great risk. Ironically, the Trustee may have never found the car had the Debtors simply accurately stated the value of their household goods.

The car's original listing of $200 may have been an error, but it is worth noting. These findings take into account the Debtors' intention to report the car was worth $2,000, not $200. However, that $200 value was listed in the Debtors' Schedule B, and then carried over to Schedule C for the Debtors' claimed exemptions. This evidence, combined with the attorney's notes, suggests that the $200 listing was the attorney's error and the Debtors did not intend to value the car at $200. However, clients are held responsible for the actions of their attorney. *See Pioneer Investment v. Brunswick*, 507 U.S. 380, 396, 113 S.Ct.

1489, 123 L.Ed.2d 74 (1993). Furthermore, the error appeared in two separate places within the schedules, which the Debtors signed under penalty of perjury certifying that they "have read the foregoing summary and schedules."

■ The Debtors' main contention is that they did not willfully undervalue the property at the time of filing. The Debtors support their contention with the amended schedules reflecting an increase in the valuation of the personal property and their overall cooperation in this case. However, none of this evidence is indicative of the Debtors' intent at the time of filing. Martin did not say how he arrived at $2,000 for the car and his appraisers were not available to testify, so there is no evidence that the figure is reasonable. The schedules were amended only after the Trustee obtained her appraisals and there is no evidence that they would have been amended before then. The Debtors' cooperation after the Trustee's appraisal may have prevented creditors from being damaged by the false schedules but are irrelevant where the issue is the Debtors' intent at the time of filing. *See Farmers Co-Op. Ass'n of Talmage, Kansas v. Strunk*, 671 F.2d 391, 395 (10th Cir.1982).

■ Having concluded that the Debtors' discharge should be denied under § 727(a)(4), there is no need to address the Trustee's contentions raised under § 727(a)(2), but the Court finds a brief discussion worthwhile. The Trustee's § 727(a)(2) argument is without merit. That section of the Code denies a debtor's discharge based on transferring, removing, destroying, mutilating or concealing property with the "intent to hinder, delay or defraud a creditor." 11 U.S.C. § 727(a)(2). In some instances, a debtor's actions can overlap §§ 727(a)(4) and 727(a)(2). *See*

---

**1.** The Debtors' original schedules stated $17,747 in personal property. Subtracting liens and exemptions ($10,506 for the truck, $3,000 for the boat, and $3,594 in exempt personal property) results in $647.00.

**2.** The Debtors' final amended schedules stated $13,100 in personal property. Subtracting the liens and exemptions ($3,000 for the boat and $3,495 for the remaining exemptions) results in $6,605.

**616**

*Hoflund*, 163 B.R. at 883. In *Hoflund*, the debtor omitted property and income from its schedules and the court ruled that such actions are both a false oath under § 727(a)(4) and fraudulent concealment under § 727(a)(2). In the present case, the Trustee has not shown that the Debtors concealed or withheld knowledge of their property. Based on Ms. Boyleston's testimony, the Debtors may have omitted two bedroom sets from their schedules. However, since the Trustee produced no evidence that the Debtors owned such property, the omission does not constitute fraudulent concealment. Indeed, the Debtors disclosed their property in the schedules, they simply did so inaccurately. The trustee's argument may be that the Debtors fraudulently concealed the value of the car; however, if purposely undervaluing property in the schedules constitutes concealment, then § 727(a)(4) would be rendered moot. Thus, § 727(a)(2) is inapplicable to the facts of this case.

The Debtors' undervaluation of their personal property and listing the car in a misleading fashion, taken as a whole, leads me to the conclusion that they acted with the requisite fraudulent intent for a denial of discharge. Accordingly, discharge is denied pursuant to 11 U.S.C. § 727(a)(4). A separate final judgment will be entered in accordance herewith.