In re Charles H. STEVENS,
Jr., Debtor.

Gregory K. Crews, Trustee, Plaintiff,

v.

Charles H. Stevens, Jr., Defendant.

Bankruptcy No. 99–6395–3P7.
Adversary No. 99–350.

United States Bankruptcy Court,
M.D. Florida,
Jacksonville Division.

June 12, 2000.

Gregory A. Lawrence, Jacksonville, FL, for trustee/plaintiff.

James S. Pearthree, Jacksonville, FL, for debtor/defendant.

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

GEORGE L. PROCTOR, Chief Judge.

This adversary proceeding came before the Court upon the complaint of Gregory K. Crews ("Trustee") objecting to the discharge of Defendant, Charles H. Stevens, Jr. ("Debtor") pursuant to 11 U.S.C. §§ 727(a)(4)(A) and (a)(2)(B). (Adv.Doc. 1.) On April 25, 2000 the Court held a trial on all issues and requested written submissions in lieu of closing oral argument. (Adv.Doc. 17.) Upon review of the evidence presented and the submissions of the parties, the Court makes the following Findings of Fact and Conclusions of Law.

### FINDINGS OF FACT

1. Debtor filed a petition for Chapter 7 bankruptcy relief on August 18, 1999. (Doc. 1.) On Schedule A, Debtor only listed an ownership interest in one parcel of real property, located in Clay County, Florida. (See Pl.'s Ex. 1.) On Schedule D, Debtor listed a security interest on that same parcel of property. (See Pl.'s Ex. 2.)

2. At Trustee's request, Debtor and Trustee had a telephone conference on September 16, 1999 prior to a scheduled § 341 meeting. During the telephone conference Debtor informed Trustee that, prior to his divorce in 1991, he jointly owned with his wife certain real property located in Suwannee County, Florida. Trustee testified that Debtor was vague about who currently owned the property. Trustee also testified that Debtor did not inform him that he received the Suwannee County property through his 1991 marriage dissolution.

3. On September 17, 1999 Trustee conducted a § 341 meeting. Trustee testified that Debtor did not disclose his ownership interest in the Suwannee County property at the § 341 meeting. Trustee further testified that, as a matter of routine, he asks all debtors whether their schedules of assets are accurate.

4. Thereafter, Trustee performed an investigation of Debtor's assets. Trustee discovered that Debtor owned approximately ten acres in Suwannee County, Florida. (*See* Pl.'s Ex. 3.)

5. On October 13, 1999 Trustee wrote Debtor requesting a copy of his Final Judgment of Dissolution of Marriage. (*See* Pl.'s Ex. 4.) Debtor provided Trustee with the paperwork, dated October 8, 1991, which provided that "the husband shall have sole ownership and possession of that ten (10) acres of real property located in Live Oak, Florida, jointly owned by the parties. The husband shall make all payments thereon to Barnett Bank, holding the wife harmless thereof. The wife shall transfer to the husband, all of her right, title and interest in said real property." (Pl.'s Ex. 5.)

6. On November 4, 1999 Trustee sent a letter to Debtor and Debtor's attorney requesting an explanation as to why Debtor did not list the Suwannee County property on his bankruptcy schedules. (*See* Pl.'s Ex. 6.) Trustee requested an immediate response, otherwise indicating that he would be objecting to Debtor's discharge.

Trustee received no response other than telephone messages from Debtor's attorney. On November 15, 1999 Trustee filed Complaint Objecting to Discharge. (Adv. Doc. 1.)

7. No pleading was filed in response to the complaint and therefore, Trustee, by default, obtained Judgment Denying Discharge on January 4, 2000. (Adv.Doc. 9.) Debtor subsequently moved to have Judgment Denying Discharge set aside. Thereafter, by order dated May 22, 2000 the Court set aside the Judgment Denying Discharge. (Adv.Doc. 16.)

8. At trial, Debtor admitted that he received two notices each year from the Suwannee County taxing authorities concerning the Suwannee County property. (*See* Def.'s Exs. 4–5.) However, Debtor indicated that he did not receive one of the 1999 tax notices until September 1999 because he was out of town. Debtor testified that it was not until he received the September 1999 tax notice that he remembered he owned the Suwannee County property. Nonetheless, Debtor admitted that he had prior tax notices in his personal file at the time he filed his bankruptcy petition. Despite remembering his ownership of the property in September 1999, Debtor did not inform his attorney or Trustee of the existence of the property.

9. Debtor testified that he informed Trustee of his ownership of the Suwannee County property during the September 16, 1999 telephone conference. Further, Debtor indicated that he produced the Final Judgment of Dissolution of Marriage upon the request of Trustee. Debtor attributed his forgetfulness to various pressing circumstances, including his financial troubles and the fact that his father paid the mortgage on the property.

10. On April 25, 2000 Debtor filed Amended Petition, Schedules and Statement of Financial Affairs, which included the previously omitted Suwannee County

property and mortgage.[1]

## CONCLUSIONS OF LAW

 "The discharge of debts is undoubtedly the philosophical and practical centerpiece of the Bankruptcy Code, and the heart of the 'fresh start provisions' ". *Prosports Management of the South, Inc. v. Jacobs (In re Jacobs)*, 243 B.R. 836, 842 (Bankr.M.D.Fla.2000) (citing *Schweig v. Hunter (In re Hunter)*, 780 F.2d 1577, 1579 (11th Cir.1986)). Given its importance, actions to deny the discharge under § 727 are construed strictly against the complaining party and liberally in favor of the debtor. *See Kalvin v. Clawson (In re Clawson)*, 119 B.R. 851, 852 (Bankr. M.D.Fla.1990). This narrow construction ensures that the "honest but unfortunate debtor" is afforded a fresh start. *See Birmingham Trust Nat'l Bank v. Case*, 755 F.2d 1474, 1477 (11th Cir.1985). A creditor seeking to deny the discharge bears the burden of proof as to each element by a preponderance of the evidence.[2] *See* FED.R.BANKR.P. 4005; *Grogan*, 498 U.S. at 287, 111 S.Ct. 654. However, once a creditor meets this initial burden, the burden shifts to the debtor to show by a preponderance of the evidence that he is entitled to a discharge. *See Clark v. Wilbur (In re Wilbur)*, 211 B.R. 98, 101 (Bankr.M.D.Fla. 1997).

## I. 11 U.S.C. § 727(a)(4)(A)

 Initially, Trustee contends that Debtor's discharge should be denied pursuant to 11 U.S.C. § 727(a)(4)(A), which provides in relevant part:

1. The Amended Petition, Schedules and Statement of Financial Affairs were subsequently stricken. (*See* Docs. 28–30.) However, the Schedules were thereafter amended on May 23, 2000. (*See* Doc. 32.)

2. In his brief, Debtor mistakenly cites to *Hunter*, 780 F.2d at 1579, for the proposition that a creditor objecting to discharge must prove a debtor's culpability by clear and convincing evidence. (*See* Def.'s Br. at 3.) However, to the extent *Hunter* stood for that proposition, it has since been abrogated by the

(a) The court shall grant the debtor a discharge, unless—

(4) The debtor knowingly and fraudulently, in or in connection with the case—

(A) made a false oath or account . . .

11 U.S.C. § 727(a)(4)(A) (West 2000). It is well established that a deliberate omission may constitute a false oath, and thus result in a denial of the discharge. *See Raiford v. Abney (In re Raiford)*, 695 F.2d 521, 522 (11th Cir.1983); *Chalik v. Moorefield (In re Chalik)*, 748 F.2d 616, 618 (11th Cir. 1984). The veracity of a debtor's petition, including schedules and statements, is essential to the successful administration of the Bankruptcy Code. *See Cepelak v. Sears (In re Sears)*, 246 B.R. 341, 347 (8th Cir. BAP 2000). Therefore, submissions "must be accurate and reliable, without the necessity of digging out and conducting independent examinations to get the facts." *Id.* (quoting *Mertz v. Rott*, 955 F.2d 596, 598 (8th Cir.1992)).

 However, § 727(a)(4)(A) is not meant to punish debtors for their mistakes or inadvertence. *See Sperling v. Hoflund (In re Hoflund)*, 163 B.R. 879, 882–83 (Bankr.N.D.Fla.1993). Because of the harshness of penalty,[3] courts generally recognize that " '[t]he reasons for denying a discharge . . . must be real and substantial, not merely technical and conjectural.' " *Equitable Bank v. Miller (In re Miller)*, 39 F.3d 301, 304 (11th Cir. 1994) (citing *Boroff v. Tully (In re Tully)*, 818 F.2d 106, 110 (1st Cir.1987) and quoting *Dilworth v. Boothe*, 69 F.2d 621, 624 (5th Cir.1934)). Therefore, the discharge

Supreme Court's decision in *Grogan v. Garner*, 498 U.S. 279, 287, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991), which holds that the proper burden of proof on an objection to discharge is the preponderance of the evidence.

3. The denial of a discharge under § 727(a) is total; all creditors continue to have post-petition claims against the debtor and his present and future assets. *See Coggin v. Coggin (In re Coggin)*, 30 F.3d 1443, 1452 (11th Cir.1994).

exception should be limited to those debtors who attempt to deny the trustee and creditors reliable information relating to their financial condition or assets. *See Hoflund*, 163 B.R. at 882–83. To deny the discharge pursuant to § 727(a)(4)(A), a court must find that a debtor knowingly made a false oath that was both material and fraudulent. *See Swicegood v. Ginn*, 924 F.2d 230, 232 (11th Cir.1991).

### A. Materiality

 To warrant a denial of discharge, the omission or false statement must pertain to a material fact. *See Haught v. United States*, 242 B.R. 522, 524 (M.D.Fla.1999) (citations omitted). The threshold for materiality is fairly low. *See Sears*, 246 B.R. at 347 (citing *Mertz*, 955 F.2d at 598). To be considered "material," and thus be sufficient to bar the discharge, the subject matter of the false oath must "bear[ ] a relationship to the bankrupt's business transactions or estate, or concern[ ] the discovery of assets, business dealings, or the existence and disposition of his property." *Chalik*, 748 F.2d at 618 (citing *In re Steiker*, 380 F.2d 765, 768 (3d Cir.1967); *Metheany v. United States*, 365 F.2d 90, 93 (9th Cir.1966)). It is no defense that the omitted or falsely stated information concerns a worthless business transaction or estate asset. *See Diorio v. Kreisler–Borg Constr. Co.*, 407 F.2d 1330, 1331 (2d Cir.1969) (noting worthless asset defense is specious). *See also Mertz*, 955 F.2d at 598 (denying discharge for omission of relatively modest asset). Also, it makes no difference that the debtor did not intend to injure his creditors when he made the false statement, as creditors are entitled to judge for themselves what will benefit and what will prejudice them. *See Morris Plan Indus. Bank v. Finn*, 149 F.2d 591, 592 (2d Cir.1945).

 There is no question that the Suwannee County property, which Debtor omitted from his schedules, pertains to a material fact. In fact, in his brief Debtor specifically "does not deny that the asset omitted was substantial, and does not deny that the omission may allow this Court to conclude that the assets were omitted purposefully with fraudulent intent so as to preclude discharge." (Def's Br. at 4–5.) (citation omitted). Moreover, the notice of proposed property taxes lists the market and assessed value of the Suwannee County property at $17,832. (*See* Def.'s Ex. 4.) Debtor himself values the property at $17,000, with a secured claim of only $3,500. (*See* Doc. 32.) Debtor neither claims the property as exempt nor disputes its substantial value. Accordingly, because the omission concerns the discovery and existence of Debtor's property, which bears a direct relationship to his estate, the Court finds the omission to be material. *See Chalik*, 748 F.2d at 618.

### B. Intent and Knowledge

 The question of whether a debtor had the requisite knowledge and intent under § 727(a)(4)(A) is a matter of fact. *See Wines v. Wines (In re Wines)*, 997 F.2d 852, 856 (11th Cir.1993). Fraudulent intent may be established by circumstantial evidence or inferred from a debtor's course of conduct. *See Rocco v. Gentiluomo (In re Gentiluomo)*, No. 93–1695–CIV–T–17(B), 1994 WL 151047, at *5 (M.D.Fla. April 12, 1994). A court may infer the requisite fraudulent intent from certain "badges of fraud," including: (1) the lack of adequate consideration received for the property transferred; (2) a family or close relationship between the parties; (3) the retention of possession, control, benefits, or use of the property in question; (4) the financial condition of the transferor before and after the transfer; (5) the cumulative effect of the transactions and course of conduct after onset of financial difficulties or threat of suit; and (6) the general chronology and timing of events. *See Gentiluomo*, 1994 WL 151047, at *5. The presence of even one of these factors may be sufficient to support a finding of fraudulent intent. *See id.* (citations omitted). Extrinsic evidence of

fraud encompasses intentional conduct designed to materially mislead or deceive creditors, including the deliberate omission of property from bankruptcy schedules. *See Panuska v. Johnson (In re Johnson)*, 880 F.2d 78, 82 (8th Cir.1989). Also, when intent is at issue, a debtor's credibility must be measured against that of the movant. *See Chancellor v. Martin (In re Martin)*, 239 B.R. 610, 614 (Bankr. N.D.Fla.1999).

■ Debtor's duty in filing his bankruptcy petition was to list all assets and fully answer the questions set forth in the petition. Debtor performed this duty under penalty of perjury. (*See* Def.'s Ex. 1 at p. 20.) Nonetheless, Debtor failed to list the Suwannee County property in his original schedules. Instead, Debtor waited until the date of trial to amend his schedules and statement of financial affairs to include the subject property.[4] *Cf. Wade v. Wade (In re Wade)*, 189 B.R. 522, 526 n. 1 (Bankr.M.D.Fla.1995) (stating debtor cannot cure intentional omission from schedules by filing amendment) (citations omitted). Debtor did this only after Trustee filed a suit objecting to his discharge, despite allegedly remembering that he owned the property in September 1999. *Cf. Mertz*, 955 F.2d at 598–99 (noting failure to amend reinforces suggestion that omission was deliberate). There is no evidence that Debtor would have amended his schedules before that time.

Also, the Court does not find credible Debtor's testimony that he simply forgot he owned the property when he completed his bankruptcy schedules. The omitted property was awarded to Debtor in a property division from his 1991 marriage dissolution. Debtor testified that, subsequent to the dissolution, he received two property tax notices each year from Suwannee County. Debtor also admitted that he kept the prior tax notices in a file and was in possession of the notices at the time he filed his petition in bankruptcy. Additionally, Debtor only owns one other parcel of real property, a single lot in Clay County, Florida. The omitted property is over ten acres in size and has an equity value of approximately $13,500. As such, it is by far the single most valuable asset of Debtor, representing approximately 99% of his unsecured non-exempt assets. Given the size and relative value of the asset, it is simply not plausible that Debtor forgot he owned the property. *See Sears*, 246 B.R. at 348 (noting size, value, and use of asset supports inference of knowledge).

■ The fact that the omitted asset is of substantial value also supports the inference that it was omitted purposefully and with fraudulent intent. *See Miller*, 39 F.3d at 304 (citations omitted); *Crews v. Topping (In re Topping)*, 84 B.R. 840, 842 (Bankr.M.D.Fla.1988). *But cf. Cohen v. Pond (In re Pond)*, 221 B.R. 29, 33 (Bankr. M.D.Fla.1998) (noting where omitted asset is of little or no value, fraudulent intent will not be imputed). Moreover, Trustee testified that Debtor was vague regarding the ownership of the Suwannee County property and that Debtor failed to inform him that he received the property in the 1991 marriage dissolution. Trustee also indicated that Debtor again failed to disclose his ownership of the property the following day at the § 341 meeting. Debtor's explanation at trial as to the state of ownership was terse, summary, vague and therefore, in the Court's opinion, without credibility. Additionally, Debtor's attempted retention of his most valuable non-exempt asset, and his general course of conduct after learning of Trustee's lawsuit, constitute two "badges of fraud" upon which fraudulent intent may properly be inferred. Clearly, the body of evidence concerning Debtor's fraud and knowledge outweighs his summary protestations of mistake and inadvertence.

For these reasons, the Court concludes that Trustee's objection based on § 727(a)(4)(A) must be sustained. Having found sufficient evidence to deny the dis-

4. *See supra* note 1.

charge pursuant to § 727(a)(4)(A), the Court will not address Trustee's § 727(a)(2)(B) claim.

### CONCLUSION

Based upon the evidence presented and the candor of the witnesses at trial, there is no doubt that Debtor intended to conceal his ownership interest in the Suwannee County property. Also, Trustee has proven by a preponderance of the evidence that Debtor knowingly and fraudulently omitted this material asset from his schedules. For the reasons discussed above, the Court concludes that Debtor is not entitled to a discharge pursuant to § 727(a)(4)(A) of the Bankruptcy Code. A separate judgment will be entered in accordance with these Findings of Fact and Conclusions of Law.