In re Bruce Allen OMANG, Debtor.

David G. Velde, Trustee, Plaintiff,

v.

Bruce Allen Omang, Defendant.

Bankruptcy No. 05–61247.
Adversary No. 07–6058.

United States Bankruptcy Court,
D. Minnesota.

April 7, 2009.

---

Logan M. Moore, Velde Moore, Ltd., Alexandria, MN, for Plaintiff.

James F. Lester, Fargo, ND, for Defendant.

## ORDER FOR JUDGMENT

DENNIS D. O'BRIEN, Bankruptcy Judge.

This matter was tried on February 25, 2009. Plaintiff trustee seeks judgment denying the debtor a discharge under 11 U.S.C. § 727(a)(4). Appearances are noted in the record of the proceeding. The Court, having received and reviewed additional briefs filed by the parties and being fully advised in the matter, now makes this **ORDER** pursuant to the Federal and Local Rules of Bankruptcy Procedure.

### I

The defendant debtor Bruce Allen Omang filed his Chapter 7 bankruptcy petition on September 19, 2005. Plaintiff David G. Velde, Trustee, seeks judgment denying his general discharge, claiming that the defendant intentionally omitted assets from the schedules filed with the petition to hide and keep them from the estate; that he intentionally undervalued certain assets with the intent to hide from the estate their true values; and, that he intentionally omitted from his schedules two judgments that had been obtained against him within six months prior to the bankruptcy filing. The Court finds that the plaintiff has not met his burden of proof and that the defendant is entitled to a general discharge.

### II

This action, commenced by the plaintiff July 31, 2006, was joined with another action against the defendant's former spouse for fraudulent transfers by the debtor to her of more that $244,000. In connection with that cause of action, the plaintiff sought denial of discharge under 11 U.S.C. § 727(a)(2). The fraudulent transfer action collapsed into a settlement with the debtor's spouse paying the estate $5,000. Focus of the remaining action against the defendant has narrowed to a number of assets claimed by the plaintiff to have been intentionally omitted by the defendant from his schedules to hide and wrongfully keep them from the bankruptcy estate, two valuation issues, and two unscheduled judgments.

### The Omitted Assets Claim.

In reviewing the defendant's pre-bankruptcy divorce decree and in conducting a title and UCC search, the Plaintiff discovered the following assets that named the defendant as owner at filing, and that the plaintiff claims were wrongfully omitted from his schedules: [1]

1. Harvest States Retirement Account, value $57,000.00

2. 1985 Ezloader Boat Trailer

3. 1999 Shorelander Boat Trailer

4. 1993 Snowmobile Trailer

5. 1985 16 foot Lund Boat "Pro Pike" with 75 hp Evinrude Motor

6. 1993 Kawasaki watercraft

7. 1993 Arctic Cat EXT snowmobile

8. 1994 Arctic Cat EXT MC snowmobile

---

**1.** Items 5, 9, 11 and 12 are listed as collateral on a financing statement in favor of Bremer Bank filed February 27, 2003, and naming both the debtor and his former spouse as the debtors. Other items, not on the plaintiff's list, are also on the financing statement. The defendant testified that those items, except for a lawn mower, are the separate property of his former spouse. He said that he sold items 5, 9 and 12 sometime in 2003. The Bank filed a continuation statement on January 30, 2008.

9. 1996 Polaris XLT TRING snowmobile
10. 1997 Arctic Cat ZL440 snowmobile
11. 1998 Arctic Cat ZL500 snowmobile
12. 2000 Polaris Sports 500 ATV
13. Lease interest in "WE Fest" booth
14. Membership interest in Epic Vacation Club.

### 1. Harvest States Retirement Account.

■ This is an ERISA[2] account that the plaintiff discovered upon reviewing the defendant's divorce decree. The defendant testified that he omitted the account from his schedules on the advice of his attorney, who advised him that the account had no cash value at filing. His attorney corroborated that testimony in his final argument, without objection by the plaintiff to counsel's offer of testimony not under oath and after the evidence phase of the trial had been closed.

### 13. Lease interest in "WE Fest" booth.

The plaintiff discovered an apparent interest of the debtor in an asset "WE Fest" booth, a subway sandwich franchise, through a UCC search revealing a financing statement listing the defendant and his former spouse as debtors for which the filer claimed a lien on the franchise assets. The debtor testified that the franchised business was the sole property of his former spouse and that he was listed on and signed the financing statement because they were married at the time and he was told that his signature was required on the document. Neither the defendant's former spouse nor the UCC filer were called to testify.

### 14. Membership interest in Epic Vacation Club.

This asset also turned up on a UCC search by the plaintiff, pledged as collateral by the defendant. The defendant testified that he believed that he had no interest in the Club when he filed his petition for three reasons. One is that he had been called upon to make a $2000 partner cash assessment payment before bankruptcy that he defaulted on. A second, is that he had tried to sell the interest prior to bankruptcy to help relieve financial distress, but could not find a buyer. And, a third, is that the Club itself had filed for bankruptcy prior to his bankruptcy filing.[3]

### 11. 1998 Arctic Cat ZL500 snowmobile.

This unscheduled asset was also discovered in the UCC search. The defendant testified that he did own the snowmobile at filing, but erroneously identified it as a 1997 snowmobile in the schedules. He testified that he did not own a 1997 snowmobile.

### 6. 1993 Kawasaki watercraft.

This too, turned up on the UCC search. The defendant testified that the watercraft had been owned by his daughter, who was a minor at the time, and that she had sold it prior to his bankruptcy filing. He testified that there has been no license registered with the state of Minnesota for the craft for a number of years, and that title remains in his name because the purchaser probably registered the title in another

---

**2.** ERISA accounts are excluded from property of a debtor's estate. *Patterson v. Shumate*, 504 U.S. 753, 112 S.Ct. 2242, 119 L.Ed.2d 519 (1992). But, the better practice is to schedule them to allow a trustee to review the accounts to satisfy the trustee that they are truly ERISA qualified. Here, the fact that the Harvest States Retirement Account is an ERISA account played no part in its omission from the schedules.

**3.** Regardless of value, the interest was not omitted from the debtor's schedules. It was listed in Schedule B with a value of 0. *Pls. Exh. 6.*

state.[4] The defendant's daughter was not called to testify.

*3.1999 Shorelander Boat Trailer and 5.1985 16 foot Lund Boat "Pro Pike" with 75 hp Evinrude Motor.*

These two items were also found in the UCC search. The defendant testified that he sold these to an individual from North Dakota in 2002 or 2003. The items have not been licensed in Minnesota since then.

*2.1985 Ezloader Boat Trailer, 4.1993 Snowmobile Trailer, 7.1993 Arctic Cat EXT snowmobile, 8.1994 Arctic Cat EXT MC snowmobile, 9.1996 Polaris XLT TRING snowmobile, 10.1997 Arctic Cat ZL440 snowmobile, and 12.2000 Polaris Sports 500 ATV.*

These are the remaining items discovered by the plaintiff in his UCC search. The defendant testified that he did not own any of these at filing, except the *Ezloader* boat trailer. That, he said, was a rusted hulk of junk. The other items, the debtor testified, were sold in 2003, except the 1996 Polaris, which he abandoned to a neighbor after the machine broke down on his neighbor's property with a blown engine. None of the items have been licensed in Minnesota after 2003.

**Valuation Issues.**

*Epic Vacation Club.*

The debtor's schedules list the debtor owning a 1/6 interest in Southpoint Courts LLC (Epic Vacation Club), with a value of zero. In his interrogatory answers, the defendant states that his interest is only 6.25% and the fair market value is $3,000. According to a compiled financial statement for South Pointe Court Partners LLP as of December 31, 2004, the partner's equity was $150,289.[5] The plaintiff claims that, if the debtor had a 6.25% interest, its value in 2004 was $9,393.06. If he had a 1/6 interest, it would have been worth $25,048.16 within nine months of filing for bankruptcy, based on the financial statement.

The defendant testified that he had believed the value of his interest to be zero when he filed his petition. As stated earlier, he testified that he had defaulted on a $2,000 partner cash call assessment, and that he had attempted to sell the interest prior to filing to ease his financial distress, but could not find a buyer. Southpoint had filed its own bankruptcy prior to the defendant's filing.

Finally, the defendant testified that, in connection with answering the plaintiff's interrogatories, he contacted an official in control of Southpoint who told him that the interest might have a value of from $3,000 to $16,000, if he could find a buyer. So, he said, he listed the value in the interrogatory answer at $3,000. Apparently, the trustee has never pursued the interest on behalf of the estate.

*Kale Construction.*

The debtor owned 100% of Kale Construction on the date of filing and listed its value as zero. The defendant testified at his 341 meeting that Kale Construction

---

4. The defendant testified that he visited the Minnesota Department of Motor Vehicles shortly before the trial and inquired why the title to this and other property on the plaintiff's list remain in his name, although he had sold the items several years before the bankruptcy. He said that he was told that the items will remain in his name permanently unless someone else registers the titles in Minnesota. The plaintiff did not object to the testimony. The defendant testified that he

knew at least two of the items were sold to individuals who live in North Dakota.

5. The statement combines 2003 and 2004. It shows Partners' equity declining from $168,146 in 2003, To $150,289 in 2004. The unaudited statement shows a net loss of $21,801 in 2003, and a net loss of $17,857 in 2004. *Pls. Exh. 11.*

had just been incorporated in August 2005, and that the only assets of the business were $500 in tools pledged by the defendant. In his answer to plaintiff's interrogatories, dated July 7, 2007, he listed its value as $10,000. The interrogatory did not ask for the value of Kale at filing in 2005, but asked for the then present value.[6]

**The Judgments.**

The trustee discovered two judgments that had been entered against the defendant within six months prior to the bankruptcy filing. One was for $28,454, docketed April 4, 2005. The second was for $18,582, docketed August 25, 2005. The debtor did not schedule either of them. He gave no clear explanation why they had been omitted from his schedules.

### III

■ Denial of a general discharge to a debtor is a draconian act. But, denial is appropriate under 11 U.S.C. § 727(a)(4) where it is shown: (1) that a debtor has intentionally omitted information with the intent that it be hidden and not discovered; and, (2) that the omission was one of a material fact. *Mertz v. Rott,* 955 F.2d 596, 597–598 (8th Cir.1992). A fact is material "if it bears a relationship to the bankrupt's business transactions or estate, or concerns the discovery of assets, business

dealings, or the existence and disposition of his property." *Rott* at 598; *In re Olson,* 916 F.2d 481, 484 (8th Cir.1990).

■ The plaintiff has the burden of proof on these issues, but once the initial burden is met by evidence establishing a basis for the objection, the burden of going forward with the evidence shifts to the debtor. *In re Martin,* 88 B.R. 319 (D.Colo.1988). A debtor cannot prevail if he fails to offer credible evidence after the creditor makes a prima facie case. *Matter of Reed,* 700 F.2d 986 (5th Cir.1983).

■ The determination here rests entirely on the defendant debtor's credibility. No other witnesses testified. The plaintiff's case was built entirely upon UCC and motor vehicle records, the defendant's dissolution decree, and his answers to interrogatories. The debtor testified candidly and succinctly, without obfuscation or evasion. His explanations regarding the alleged omissions were direct and plausible. The testimony was credible.

Viewed in that light, it cannot be said that the defendant intentionally omitted any property from his schedules, other than his ERISA pension.[7] And, although that omission was inappropriate for the reasons given, it cannot be said that it was for the purpose of evasion.[8]

---

**6.** The question was: "Do you have any interest in any sort of business? If so, please specifically state what this business is any [*sic*] what your interest in it might be. Also state your opinion as to the fair market value of your interest in the business and specify any loans encumbering such." *Plaintiff's Exh. 3, p2.*

**7.** The fact that a continuation statement was filed in 2008 by Bremer Bank covering some of the items on the plaintiff's list of alleged omissions, is not persuasive of continued ownership of them by the debtor. The record does not reflect what the underlying loan was for or its amount, and the debtor's former

spouse is listed first as a debtor on the original statement. She apparently has a continuing substantial business and it is quite plausible that the continuation statement was filed in connection with her continuing lending relationship with the Bank. The financing statement is very broad and covers "All Inventory, Accounts, Equipment and General Intangibles...."

**8.** The defendant's counsel was admonished during his closing argument that property of a debtor cannot be omitted from the schedules based on an opinion that it has no value. Value of a debtor's property is determined, in

Similarly, the allegation that the defendant intentionally undervalued certain assets with the intent to hide from the estate their true values, cannot be sustained on the evidence in this record. Statements of values by debtors in their schedules are opinions. Valuations made in good faith are not a basis for denial of discharge simply because they turn out to be wrong. Here, it has not been shown that the valuations were wrong, and certainly not that they were made in bad faith.

Kale Construction was a start up company at filing of the debtor's bankruptcy in September 2005, with $500 in assets contributed by the defendant in return for stock. The plaintiff argues that because the defendant valued the company at $10,000 in July 2007, the scheduled value in 2005 of 0 must have been nefariously understated. The assertion is without basis.

So is the assertion that the Epic Vacation Club was nefariously undervalued in the schedules. The claim is based solely on an unaudited financial statement of South Pointe Court Partners LLP, whose sole and single asset company, Southpoint Courts LLC, filed bankruptcy within several months after its issue.[9] The defendant's 2007 valuation of the interest at $3,000 in his answers to the plaintiff's interrogatories was, according to him, based on a theoretical number within a range furnished him on inquiry, assuming that he might find a buyer. His valuation of 0 in his 2005 schedules has not been shown to be either wrong or in bad faith.

Finally, it has not been shown that the omissions from the schedules of the two judgments were either intentional or ne-

farious. The omissions certainly would not sustain a denial of discharge.

## IV

Accordingly, it is hereby **ordered:**

Defendant Bruce Allen Omang is entitled to his general discharge in case No. 05–61247, and the discharge shall be entered forthwith upon entry of the judgment herein.

**LET JUDGMENT BE ENTERED.**

---

the first instance by the trustee, and in cases of disputes, then by the Court.

**9.** Apparently, the plaintiff has not attempted to liquidate the interest.