**In re Carla Michelle–Lynne GREW, Debtor.**

**Thomas S. Heidkamp, Plaintiff,**

**v.**

**Carla Michelle–Lynne Grew, Defendant.**

**Bankruptcy No. 9:01–bk–06976–ALP. Adversary No. 01–560.**

United States Bankruptcy Court, M.D. Florida, Ft. Myers Division.

Feb. 27, 2004.

Christian B. Felden, Naples, FL, David H. Raaflaub, Ypsilanti, MI, for Debtor/Defendant.

Thomas S. Heidkamp, Tee, Leasure & Heidkamp, Ft. Myers, FL, for Plaintiff.

### FINDINGS OF FACTS, CONCLUSIONS OF LAW AND MEMORANDUM OPINION

ALEXANDER L. PASKAY, Chief Judge.

The matter under consideration in this Chapter 7 case is a challenge by Thomas Heidkamp (Trustee) of the right of Carla Michelle–Lynne Grew (Debtor) to the benefits of the general discharge otherwise available to individuals in a Chapter 7 case. Originally, the Trustee initiated this adversary proceeding on August 6, 2001, by the filing of a Complaint for revocation of the discharge (Doc. No. 1). The Trustee then amended the original Complaint twice, and as a result, the governing complaint is his Second Amended Complaint Objection to Debtor's Discharge (Doc. No. 33), which sets forth four claims in four separate Counts.

The claim in Count I is based on the allegation that the Debtor, during the one year preceding the commencement of her Chapter 7 case, transferred with the intent to hinder, delay, or defraud a creditor her following properties:

a) The Debtor's interest real property in Brooklyn, Michigan. The Debtor's interest real property in Lenawee County, Michigan.

b) The Debtor's interest real property in Jackson County, Michigan.

c) The Debtor's interest in other real property in Michigan, Florida, any other state or country as may be revealed or information obtained through either informal or formal discovery in this adversary.

d) The debtor's interest in Mikkis Hallmark Shop.

e) The debtor's interest in Mikkis Hallmark Shop that may be a different location from the debtor's interest alleged in paragraph 6(d) above.

f) The debtor's interest in a business that operated under the name "Touch o' County."

g) The debtor's interest in G & G International.

h) The debtor's interest in personal injury protection benefits from Michigan Millers Mutual Insurance Company.

i) The debtor's interest in an uninsured motorist claim that includes but is not limited to the debtor's failure to appear for depositions and medical examinations that may have resulted in the abandonment of an uninsured motorist claim that the debtor valued at $100,000 on schedule "B."

j) The Debtor's interest in other personal property, claim or asset of any that may be revealed or information obtained through either informal or formal discovery in this adversary.

k) The Debtor's transfer of assets after the entry of a January 12, 2001 order restraining the debtor from transferring assets that include assets that were transferred to Steven Grew and

other assets, property, claims or may be revealed or information obtained through either informal or formal discovery in this adversary.

*See* Complaint, ¶ 6, copied verbatim. Therefore, the Trustee asserts that the Debtor is not entitled to a discharge pursuant to Section 727(a)(2)(A) of the Bankruptcy Code.

The claim in Count II is based on the allegation that the Debtor transferred her properties of the estate after the commencement of the case in violation of Section 727(a)(2)(B) of the Code. The claim in Count III is based on the allegation that the Debtor knowingly and fraudulently made a false oath in connection with her case by failing to schedule her properties and falsely answering certain questions on the Statement of Financial Affairs in violation of Section 727(a)(4)(A) of the Code. The claim in Count IV is based on the allegation that the Debtor failed to explain satisfactorily any loss of assets or deficiency of assets to meet her liabilities. Therefore, she is not entitled to a discharge pursuant to Section 727(a)(5) of the Code.

At the properly noticed final evidentiary hearing, the record established the following facts relevant to the claims under consideration. On April 18, 2001, the Debtor filed her Voluntary Petition for Relief under Chapter 7 of the Bankruptcy Code. At that time, Richard Johnston Jr., who signed the Petition as counsel of record for the Debtor, represented her. Mr. Johnston appeared at the Section 341 meeting as her counsel, but on June 18, 2001, he filed Motion to Withdraw from any further representation of the Debtor (Main Case, Doc. No. 5). On July 23, 2001, this Court granted the motion of Mr. Johnson and directed that all further notices be sent to the address of record of the Debtor in Cape Coral, Florida (Main Case, Doc. No. 16).

On January 22, 2002, Mr. Felden filed his Notice of Appearance as counsel for the Debtor (Main Case, Doc. No. 25). On July 8, 2002, Mr. Felden filed his Motion to Withdraw as counsel for the Debtor (Main Case, Doc. No. 43). On July 26, 2002, David H. Raaflaub filed a Motion to Appear *Pro Hoc Vice* for the Debtor (Main Case, Doc. No. 52), which was granted by the entry of an Order on August 29, 2002 (Main Case, Doc. No. 60).

On August 20, 2002, the Debtor filed her first Amended Voluntary Petition including Statement of Financial Affairs Schedules A–J Amended Summary and Amended Statement of Intention (Main Case, Doc. No. 57). On August 30, 2002, the Amended Petition, with all the attachments, was stricken for failure to pay the required filing fee and improper service (Main Case, Doc. No. 61). On March 7, 2003, Mr. Raaflaub filed the Debtor's second Amended Voluntary Petition with all the required attachments (Main Case, Doc. No. 82). This was also stricken by an Order entered on March 18, 2003 (Main Case, Doc. No. 83); however, on March 26, 2003, a Proof Service of the Amended Petition and the Attachments was filed by Linda Bussey, as an "Interested party," thereby curing the deficiencies (Main Case, Doc. No. 102).

On January 16, 2004, the Debtor filed an Amended Schedule of D, E, F, as well as an Amended Voluntary Petition, Amended Schedules A, B, C, G, and H; and also an Amended Statement of Financial Affairs and Statement of Intention (Main Case, Doc. No. 154). All these documents were file by the Debtor in proper person.

Although it is difficult to ascertain with certainty how many times the Debtor filed amendments to her Schedules and Statement of Financial Affairs, it appears that there were at least three attempts to disclose assets, which were not disclosed in

the original Schedules. Moreover, the record is clear that these amendments were prompted by discovery of additional assets by the Trustee. It is further without dispute that the amendments also furnished piece by piece, the "correct" disclosures on the Statement of Financial Affairs.

For example, on her original Schedule A, the Debtor only disclosed her interest in the real property in Cape Coral, Florida. However by the final amended Schedule A, she fully disclosed her interests in the real property in two additional properties located in Onstead and Brooklyn, Michigan. Thus, she increased the total estimated value of the Schedule A properties from $300,900 to $1,028,800. Additionally, she failed to fully disclose numerous items of personal property on the original and several subsequent Schedule B forms. Originally, she proffered personal property totaling $112,425.08. Throughout subsequent amendments, she disclosed numerous other items of personal property, including several claims she sought against other individuals, and store fixtures in the basement of the previously undisclosed real property in Brooklyn, Michigan, ultimately totaling $77,644,125.

The Debtor also failed to disclose in Schedule D that she had paid off the secured debt on the 1999 Ford Windstar and the Washington Mutual Home loan on the previously undisclosed real property in Onstead, Michigan. Likewise, when she filed the original Schedule G, she stated that she held no executory contracts or unexpired leases. However, by the final amended Schedule G, she disclosed that she held an unexpired lease with Speedway Motors; a pending contract to sell Mikki's Hallmark to her daughter, Sarah Vincent; an automobile policy; and several business policies.

Although the Debtor stated that she had no co-debtors in her originally filed Schedule H, the subsequent amendments revealed that she shared several debts with a one Thomas R. Grabowski, in addition to debts that she shared with numerous other individuals and companies. In her original Schedule I, she stated that her only monthly income was a social security/disability benefit in the amount of $535. She later provided other income including money she received for renting a room in her home, and the resale of items at an auction.

The record reveals that the Debtor made significant changes to her subsequent Statements of Financial Affairs that indicate a lack of candor to this Court. For example, she originally disclosed that she made no payments to insiders, yet on the amended Statements, she revealed transfers to insiders including several to Mr. Grabowski; at least one to her daughter, Sarah Vincent and another to her brother, Stephen Grew. In her final amended Statement, she also indicated, for the first time, a transfer of property from her brother to her daughter. In her originally filed Statement, she indicated that she received no income from her business, but her amended Statements showed that she received significant income from her businesses with G & G Garage Sales, Brooklyn Lakeshore Development, Inc., and the sale of Mikki's Hallmark.

At the trial, it was established without any dispute that as the result of the entry of a Judgment of Divorce (Trustee Ex. 10), the Debtor was awarded ownership of two pieces of real property. These properties included the following:

Real property in Lenawee County, Michigan, referred to as the Kingsley property; and

Real Property referred to as Mikki's Hallmark, located in Columbia County, Michigan.

It was further substantiated at the trial that the Debtor transferred her interest in the Mikki Hallmark property to Mr. Grabowski by Warranty Deed dated November 7, 2000 (Trustee Ex. 11). The Debtor transferred her interest in the Kingsley property, which was her former homestead, to Mr. Grabowski by Quitclaim Deed (Trustee Ex. 12) on April 14, 2000. And finally, the Debtor transferred the Brooklyn property listed on her schedules, which consisted of a commercial building and the real property, also to Mr. Grabowski. The consideration for the transfers was "love and affection," although the transfer by Warranty Deed of the Mikki Hallmark purports to be for the sum of $15,000. This gentleman lived with the Debtor but, according to her, was not "boyfriend." This relationship was ultimately severed and she is now involved in litigation with Mr. Grabowski.

It is without dispute that the Debtor also had a one-third ownership interest in a flea market booth operated under the name of G & G Garage Sales, which she apparently abandoned. Her current residence is in Cape Coral, Florida. She apparently purchased this residence, although the title was placed in the name of Mr. Grabowski who according to the Debtor did not contribute anything toward the purchase of the residence. She justified the transfers to Mr. Grabowski of her interest in the real properties because she wanted to prevent her ex-husband from "stealing" them.

The Debtor did not produce any evidence to refute the majority of the charges asserted by the Trustee. In defense, she claimed that she gave the information concerning the properties to her first attorney, Mr. Johnson but that he refused to include them in the Schedules. She did not subpoena Mr. Johnson to substantiate this claim. Neither did she subpoena Mr.

Grabowski to substantiate her claim that the transfer of the real properties to him were proper, and that she was not motivated to transfer these properties in order to hinder, delay, or to defraud a creditor. In addition, she claimed that as the result of an accident, she suffered brain damage and lost control of her affairs and three other people handled her finances. Again, she failed to present any evidence to substantiate this claim.

Basically these are the facts established at the final evidentiary hearing based on which the Trustee contends that the Debtor is not entitled to a discharge.

It is well established that the provisions of the discharge were designed to assist a financially distressed debtor to give a fresh start in life unencumbered from the financial vicissitudes of the debtor's past. *Grogan*, 498 U.S. at 286, 111 S.Ct. 654. Thus, these provisions of the Code should be construed in favor of the debtor and strictly against the one who challenges the debtor's right to the discharge. *Fleet Securities, Inc. v. Vina (In re Vina)*, 283 B.R. 803, 807 (Bankr. M.D.Fla.2002). However, it is equally true that the benefits of the discharge are reserved to honest debtors.

It should be noted at the outset that while the burden of proof is on the party challenging a debtor's right to benefits of the general discharge, the standard of proof is no longer the clear and convincing evidence but a mere preponderance is sufficient to prevail on the objections. *Grogan v. Garner*, 498 U.S. 279, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991)(dicta); *In re Keeney*, 227 F.3d 679 (6th Cir.2000); *In re Scott*, 172 F.3d 959 (7th Cir.1999); *In re Brown*, 108 F.3d 1290 (10th Cir.1997).

A debtor who comes to the bankruptcy court must come clean and make full disclosure of all information relevant to

the administration and must fully cooperate with the trustee. *Kentile Floors, Inc. v. Winham*, 440 F.2d 1128 (9th Cir.1971); *In the Matter of Garman*, 643 F.2d 1252 (7th Cir.1980). It is not for the debtor to decide what is and is not relevant. A debtor who omits important information and fails to make full disclosure, places the right to the discharge in serious jeopardy. Neither would an attempt or willingness of the debtor to undo a tainted transaction and recover the property transferred or through amendment of the schedules or the statement scheduled the first time assets previously not scheduled or correct, previously furnished incorrect answers to questions on the statement of financial affairs negate the non-disclosure and somehow clean the debtor's hands.

■ While isolated instances of omissions could be attributable to oversight or even excusable negligence, a pattern of omissions of important information clearly warrants the conclusion that the omissions from the Statement of Financial Affairs and the Schedules was done intentionally and with the requisite fraudulent intent. Therefore, it is logical to conclude that the debtor did in fact make a false oath in connection with the case. *In re Hoflund*, 163 B.R. 879 (Bankr.N.D.Fla.1993)

■ Whether or not the omissions were disclosed at the Section 341 meeting is of no consequence. It is well established that the debtor may not hide behind the "invisible cloak" of disclosure by alleging that although the required information was not listed on the appropriate schedules, the omitted assets were revealed to the Trustee at the 341 meeting of creditors. Some policy considerations mandate that the requirement to list all assets and liabilities is an absolute obligation of those seeking discharge of their debts. Any other result would put the debtor in the position of deciding which assets are worthy of disclosure and which are not. Creditors are entitled to judge for themselves which assets will and will not benefit the estate. The veracity of a debtor's Statement is absolutely essential to the successful administration of the Bankruptcy Code. *Diorio v. Kreisler–Borg Construction Co.*, 407 F.2d 1330 (2nd Cir.1969); *In re Chalik*, 748 F.2d 616 (11th Cir.1984). Incomplete Schedules, improper and incorrect answers on the Statement of Financial Affairs are forgiven at times if the debtor is not represented by counsel or is not a person of any sophistication.

In the present instance, it is without dispute that counsel represented the Debtor at times various times; but ultimately, they all withdrew. She no longer has any legal representation and she represented herself in this adversary proceeding. Prior to this bankruptcy case, the Debtor spent several years as the owner and operator of a Hallmark card store in Michigan. Likewise, she has engaged in several real estate and business transactions and has been involved in numerous court proceedings. This is not an instance where the Debtor is a naive and unsophisticated individual, who is not capable of understanding the meaning of the questions on the Statement of Financial Affairs and Schedules stated in plain English. This proposition flies in the face of common sense and every day experience of anyone with even a minimum of savvy and experience. *In re Kessler*, 51 B.R. 895 (Bankr.D.Kan.1985).

Considering the four separate grounds, which form the basis of the Trustee's challenge of the Debtor's right to a discharge, seriatim, this Court finds and concludes as follows.

■ As noted earlier, the Trustee's claim in Count I is based on Section 727(a)(2)(A) of the Code, alleging a transfer by the Debtor within one year preced-

ing the bankruptcy filing of her interest in property of the estate with the intent to hinder, delay or defraud a creditor. While there is no question that the Debtor did indeed transfer her interest in property of the estate and some of it within the one year preceding the commencement of this case, there is no evidence in this record that warrants the finding that any of the transfers were made with the requisite intent to hinder, delay or defraud creditors. *See Henkel v. Green (In re Green)*, 268 B.R. 628, 646 (Bankr.M.D.Fla.2001). The fact that the transfers to Grabowski were without any consideration is of no consequence simply because there is nothing in this record to support the finding that they were done to prevent a creditor to reach these properties. It is clear that it was done to prevent the Debtor's ex-husband to obtain control of these properties, and he was not a creditor of the Debtor.

█ The claim in Count II is based on Section 727(a)(2)(B) of the Code, where the Trustee alleges that the Debtor transferred an interest in property of the estate after the commencement of her Chapter 7 case. The alleged transfer is based on the undisputed fact that the Debtor filed at least two lawsuits seeking to enforce a chose of action without obtaining leave of the Court. While it is true that the Debtor had no right to seek to enforce these claims because both chooses of action were properties of the estate and the Trustee had the right to seek to intervene in those lawsuits, the mere filing of these suits were not "transfers." Absent any evidence that the Debtor assigned these chooses of action to anyone, this claim of the Trustee must also fail.

█ The claim asserted in Count III is based on Section 727(a)(4) of the Code, where the Trustee alleges that the Debtor knowingly and willfully made a false oath in connection with her case. Applying the principles that govern an objection to discharge, as described *supra* in detail, this Court is satisfied that the Trustee did establish with the requisite degree, all operating elements of this claim. Therefore, the proof is more than sufficient to deny the Debtor's discharge.

█ Lastly, the claim in Count IV is based on Section 727(a)(5) of the Code, where the Trustee alleges that the Debtor failed to furnish a satisfactory explanation of loss of assets or diminishment of her assets to meet her liabilities. There is no question that the Debtor obtained substantial assets through her divorce, that while she did explain the disposition of her interest in real properties through the transfer of those interests to Grabowski, on the date of the commencement of the case, she no longer had some of her assets and failed to furnish a satisfactory explanation concerning the disposition of these assets. *See Caterpillar, Inc. v. Angel Gonzalez (In re Gonzalez)*, 302 B.R. 745, 754 (Bankr. S.D.Fla.2003). Thus, this Court is satisfied that the evidence as supported by the record to the Trustee's challenge of the Debtor's right to a discharge under this Count equally furnishes a basis to deny her discharge.

This Court will enter a separate final judgment in accordance to the foregoing.