**In re Nicholas W. EIGSTI, Debtor.**

**Syngenta Seeds, Inc., Plaintiff,**

**v.**

**Nicholas W. Eigsti, Defendant.**

**Bankruptcy No. 04–BK–08444–KRM.
Adversary No. 04–0444.**

United States Bankruptcy Court,
M.D. Florida,
Tampa Division.

Feb. 24, 2005.

Benjamin G. Martin, Sarasota, FL, for Debtor.

Donald R. Kirk, Esq. and Yvette F. Zassenbraker, Esq., Fowler, White, Boggs, Banker, P.A., for Plaintiff.

### FINDINGS OF FACT AND CONCLUSIONS OF LAW FOR ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

K. RODNEY MAY, Bankruptcy Judge.

This case came before the Court for hearing on January 28, 2005 to consider the Plaintiff's Motion for Summary Judgment based on 11 U.S.C. § 727 and pursuant to Bankruptcy Rule 7056. Syngenta Seeds, Inc. ("Syngenta") objects to the discharge of debt sought by Nicholas W. Eigsti ("Debtor") under Chapter 7 of the Bankruptcy Code. According to Syngenta's Motion for Summary Judgment, the specif-

ic grounds for a denial of the discharge are: (1) 11 U.S.C. § 727(a)(2)(A) and (B)—improper transfers of property within one year of the petition date and after the petition date and (2) 11 U.S.C. § 727(a)(4)—the false oaths made by the Debtor in this case.

### STANDARD OF REVIEW

Summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Bankruptcy Rule 7056. A party seeking summary judgment bears the burden of proving that no genuine issue of material fact exists for trial and that the movant is entitled to judgment as a matter of law when all the evidence is viewed in the light most favorable to the nonmoving party. *Dalton v. FMA Enterprises, Inc.,* 953 F.Supp. 1525, 1526 (M.D.Fla.1997).

### PROCEDURAL AND FACTUAL BACKGROUND

#### The Parties' Pre–Petition Proceedings

The Debtor is a scientist who previously worked on developing new types of watermelons. He received his bachelor's degree from Goshen College, his master's degree from Ball State University and spent seven years pursuing a Ph.D. at Michigan State, Iowa State, and the University of Kentucky. The Debtor is also a businessman who, at the time of his petition, was the President and fifty-percent shareholder of Seedless Enterprises, Inc. and was involved with other business entities as well. The Debtor is experienced in litigation and the taking of oaths. The Debtor was involved in pre-bankruptcy litigation during which he was examined in depositions and testified before a jury in federal court.

As a result of this litigation, Syngenta is a creditor of the Debtor pursuant to a June 25, 2003 federal court amended final judgment against the Debtor in the principal amount of $2,064,288.50 ("Final Judgment"). The Final Judgment relates to approximately $1 million in money that the Debtor received from Syngenta a few years prior to the bankruptcy filing. Syngenta vigorously pursued the Debtor in state court to collect the Final Judgment. During these proceedings, the Debtor failed to attend three depositions, two of which were under court order. The Debtor was incarcerated for his failure to attend depositions and failure to produce a single document responsive to Syngenta's document requests. The Debtor filed bankruptcy one day before a deposition which could have expunged a contempt finding.

#### The Debtor's Continued Nondisclosure During Bankruptcy

The Debtor filed his voluntary petition for Chapter 7 relief on April 29, 2004. (Bankr.Dkt.1). The Debtor filed his Initial Schedules and Statement of Financial Affairs on May 13, 2004. (Bankr.Dkt.9). The Debtor did not disclose information concerning his financial affairs during the bankruptcy case. For example, an August 26, 2004 Order granting Syngenta's Motion to Compel required the Debtor to produce all documents to Syngenta by August 31, 2004 and attend a Rule 2004 exam. (Bankr.Dkt.43). Not until this Court entered an October 15, 2004 Order relating to Syngenta's Motion for Contempt and Sanctions against Eigsti did the Debtor attend a deposition and produce any documents. (Bankr.Dkt. 66; Adversary Dkt. 11).

On September 24, 2004, Syngenta filed an adversary proceeding objecting to the Debtor's discharge pursuant to 11 U.S.C. § 727. (Adversary Dkt. 1) The Debtor

omitted numerous assets and transfers of assets in his sworn Schedules and/or Statement of Financial Affairs. The Debtor admitted to his failure to disclose ownership or transfers of assets during his depositions and made one amendment to his Schedules on November 5, 2004, the day after his second deposition. (Bankr. Dkt.83)

### PROPOSED FINDINGS OF FACT

The Court finds that the Debtor failed to disclose numerous, valuable assets and transfers of assets from his sworn Schedules and/ or Statement of Financial Affairs. These omitted assets include:

(1) In reporting his income other than from employment or operation of business for the year prior to his bankruptcy filing, Debtor omitted payments received of $7,000 from the sale of a semi truck owned by Debtor, $20,000 as repayment of a loan from Debtor's son, and $1,508 from the sale of Debtor's Eastman Kodak Company stock, all of which were deposited into Debtor's wife's bank account;

(2) a co-ownership interest in a 2001 Dodge Ram–2500 truck was originally omitted from his schedules and then later included in the Amendment filed the day after Debtor's second deposition, which was more than six months after the original petition date;

(3) a 2000 Crosby trailer which, again, was later included in the Amendment;

(4) a 1999 21 ft. Wellcraft boat and a 2001 Rolls–Axle Heavy Trailer, which were eventually sold by the Trustee for $11,000;

(5) the sale of two 1995 Freightliner semi trucks to Mr. Velasquez, which were later included in the Amendment;

(6) $8,000 that the Debtor's wife claims is still owing from Mr. Velasquez from the sale of the semi trucks;

(7) a tractor that was later sold by the Trustee for $20,350;

(8) a $14,672.59 tax refund which was received post-petition and deposited into Debtor's wife's bank account;

(9) a $14,000 microscope;

(10) a 40 ft. crane that the Debtor claims is either to be returned to him or for which he is owed at least $6,000; and

(11) disk farming equipment purchased by the Debtor for $16,000.

The Debtor only partially disclosed other financial transactions involving either friends or family, including:

(1) the May 2003 transfer of 6 parcels of real property in Sarasota County, Florida to a friend, Mike Cesario, allegedly for the extinguishment of an unsecured, interest-free $20,000 loan, which were later sold by Mr. Cesario for $125,000;

(2) the transfer of $200,000 in cash to Debtor's son, Geoff Eigsti, and his business associate, Lem Chesser;

(3) an outstanding "home" loan to Geoff Eigsti;

(4) a transfer of money to Geoff Eigsti; and

(5) a transfer of money to Debtor's son, Gregor Eigsti.

The Debtor originally valued his personal property at $16,735, but after discovery and depositions, the true value of the Debtor's assets is at least two to three times that which was originally listed on the Debtor's sworn Schedules and/ or Statement of Financial Affairs.

### PROPOSED CONCLUSIONS OF LAW

#### I. Introduction

Bankruptcy is an extraordinary remedy for individuals who find themselves so debt-ridden that a discharge of debt is required to provide them a fresh

start. *In re Grew,* 310 B.R. 445, 450 (Bankr.M.D.Fla.2004)(citing *Grogan v. Garner,* 498 U.S. 279, 286, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991)). The result for the creditors of such individuals is often stark; in fact, many Chapter 7 cases result in no distribution for unsecured creditors. In order for an individual to get this extraordinary relief, the Bankruptcy Code requires that a Chapter 7 debtor fulfill certain fundamental duties, the most essential of which is the complete and honest disclosure of assets and recent transfers by the debtor. *Id.* at 450–451. Such disclosure allows a Chapter 7 trustee to properly administer the debtor's estate.

■ When a debtor does not fully disclose assets or recent transfers on its sworn Schedules or Statements of Financial Affairs, the court may decide to deny discharge of debt pursuant to 11 U.S.C. § 727. The purpose of a Section 727 inquiry is to prohibit a discharge "for those who play fast and loose with their assets or with the reality of their affairs." *In re Leffingwell,* 279 B.R. 328, 350 (Bankr.M.D.Fla.2002)(quoting *In re Hatton,* 204 B.R. 477, 482 (E.D.Va.1997)). "The statute maintains the integrity of the bankruptcy process by insuring that neither the trustee nor the creditors needs 'to engage in a laborious tug-of-war to drag the simple truth into the glare of daylight.'" *Id.*

The record in the present case demonstrates that the Debtor did not comply with the complete and honest disclosure as required by the Bankruptcy Code. While there remains genuine issues of fact which preclude summary judgment under § 727(a)(2), the undisputed record requires the denial of the Debtor's discharge pursuant to § 727(a)(4). Therefore, Summary Judgment is appropriate under 11 U.S.C. § 727(a)(4).

## II. Summary Judgment Denied Pursuant to 11 U.S.C. § 727(a)(2)

■ Pursuant to 11 U.S.C. § 727(a)(2), a debtor is entitled to discharge unless, "the debtor, with intent to hinder, delay, or defraud a creditor ... has transferred, removed, destroyed, mutilated, or concealed ... property of the debtor, within one year before the filing of the petition" or after the petition. *See In re Sofro,* 110 B.R. 989, 991 (Bankr.S.D.Fla.1990). The intent to hinder, delay, or defraud a creditor may be imputed to a debtor where the debtor fails to make a full disclosure of his liabilities in the petition for relief and omits assets of substantial value from the Schedules. *Id.*

■ While it has been determined that the Debtor failed to disclose numerous assets, the issue of intent under § 727(a)(2) cannot be resolved on summary judgment because fact issues remain. For example, the transfer of real property to Mr. Cesario raises the factual question of whether this transfer was fraudulent. As to the deposits made into the Debtor's wife's bank account, there remains a genuine issue of fact regarding whether those transfers were made to hinder, delay and/ or defraud. Finally, the Debtor has raised a fact issue regarding whether the other transfers occurred outside of the one-year period prescribed by the statute.

The record does not definitively establish that the Debtor intended to hinder, delay or defraud his creditors through his transfers and omissions. Because of the fact issues that remain, summary judgment pursuant to 11 U.S.C. § 727(a)(2) is not appropriate.

## III. Summary Judgment Granted Pursuant to 11 U.S.C. § 727(a)(4)

■ In seeking the denial of a discharge pursuant to § 727(a)(4), the objecting par-

ty must establish the following elements by a preponderance of the evidence: (1) the debtor made a statement under oath; (2) that statement was false; (3) the debtor knew the statement was false; (4) the debtor made the statement with fraudulent intent; and (5) the statement related materially to the bankruptcy case. *In re Perry,* 252 B.R. 541, 549 (Bankr.M.D.Fla. 2000).

In the present case, the record clearly establishes that the Debtor knowingly made false statements under oath by omitting numerous assets from his sworn Schedules as well as his Statement of Financial Affairs and later admitting to these omissions during his depositions. "The subject matter of a false oath is 'material' and thus sufficient to bar discharge, if it bears a relationship to the bankrupt's business transactions or estate, or concerns the discovery of assets, business dealings, or the existence and disposition of his property." *In re Caserta,* 182 B.R. 599, 607 (Bankr.S.D.Fla.1995)(citing *In re Chalik,* 748 F.2d 616, 618 (11th Cir.1984)). In the instant case, the Debtor's omissions involved substantial dollar amounts and could easily have prevented the discovery of numerous assets belonging to the estate. Thus, the false oaths knowingly made by the Debtor were material.

We are left with the fraudulent intent element, which generally must be proven by actual, not constructive fraud. *In re Leffingwell,* 279 B.R. 328, 350 (Bankr.M.D.Fla.2002). If there is no direct evidence of actual fraud, however, the objecting party may establish actual fraud in one of two ways. *Id.* First, the objecting party may show that the debtor has engaged in a pattern of concealment. *Id.* Second, the objecting party may show that the debtor had a reckless indifference for the truth. *Id.*

## A. *Pattern of Concealment*

In *Leffingwell,* the objecting party alleged that the debtors failed to list or undervalued property of the estate, failed to disclose a gift to their son, failed to disclose payments made to creditors within 90 days preceding their bankruptcy filing, and misrepresented their income and expenses. *Id.* at 339–340. The court noted that the determination of whether a debtor had made a false oath within the meaning of § 727(a)(4) was a question of fact. *Id.* at 340. As the defendants had later conceded that they made false oaths or omissions regarding certain allegations, the court required the objecting party to establish only the disputed allegations as false oaths. *Id.*

Regarding fraudulent intent, the court found a pattern of concealment in the debtors' conduct. *Id.* at 352. The debtors had engaged in pre-bankruptcy planning, including liquidating assets and using up all of their available cash. *Id.* The debtors were found to have made false oaths to create the inference that their estate was without assets. *Id.* From this pattern of concealment, the court concluded that the objecting party had established that the debtors' false oaths were made with fraudulent intent. *Id.*

In the present case, the record clearly establishes a pattern of nondisclosure by the Debtor in these proceedings. The Debtor had a history of litigation with Syngenta in which the Debtor repeatedly failed to comply with discovery procedures, to the point that the Debtor was incarcerated for contempt at one time. This Court has had to order the Debtor to appear for a Rule 2004 examination and to otherwise comply with discovery requests. As a result of the discovery efforts undertaken by Syngenta and the Trustee, it was revealed that the Debtor had omitted assets valued

at least two or three times those that were originally disclosed in his sworn Schedules and Statement of Financial Affairs. These "non-disclosed" assets and transfers include: (1) payment received of $7,000 from the sale of a semi truck; (2) payment received of $20,000 from the repayment of a loan; (3) payment received of $1,508 from the sale of Kodak stock; (4) co-ownership of a 2001 Dodge Ram truck; (5) a 2000 Crosby trailer; (6) a 1999 Wellcraft boat; (7) a 2001 Rolls–Axle Heavy Trailer; (8) the sale of two 1995 Freightliner semi trucks; (9) $8,000 owed to the Debtor from the sale of the semi trucks; (10) a tractor; (11) a $14,672.59 tax refund; (12) a $14,000 microscope; (13) a 40 ft. crane; (14) disk farming equipment purchased by the Debtor for $16,000; (15) the transfer of six parcels of real property to Mike Cesario; (16) the transfer of $200,000 to Geoff Eigsti and Lem Chesser to fund a business; (17) an outstanding home loan to Geoff Eigsti; (18) a transfer of money to Geoff Eigsti; and (19) a transfer of money to Gregor Eigsti. Only after numerous depositions of the Debtor, his family members, and others, and more than six months from his original petition date, did the Debtor amend his Schedules to include only some of the items discovered by Syngenta and the Trustee. This pattern of concealment evidences the fraudulent intent element required under § 727(a)(4).

## B. *Reckless Indifference for the Truth*

"[M]ultiple inaccuracies in a debtor's petition and bankruptcy schedules taken cumulatively evidences a 'cavalier disregard for the truth serious enough to supply the necessary fraudulent intent required by § 727(a)(4)(A).'" *In re Leffingwell,* 279 B.R. at 351 (quoting from *In re Hatton,* 204 B.R. 477, 484 (E.D.Va.1997)).

In *Leffingwell,* after establishing fraudulent intent with the debtors' pattern of concealment, the court also concluded that the debtors' reckless indifference for the truth established fraudulent intent. *Id.* The debtors attempted to explain their false oaths and omissions in their Schedules and Statement of Financial Affairs by claiming that the errors were inadvertent, a result of the debtors' ignorance of bankruptcy, and caused by the hurried manner in which these papers were prepared. *Id.* As both debtors were highly educated and accustomed to dealing with financial transactions, the court found that they understood the importance of ensuring that their paperwork was accurate and truthful. *Id.* at 351–352. The court also rejected the debtors' argument that their bankruptcy papers were prepared in a hurried manner, because the debtors had been aware of their debt situation for a long time. *Id.* at 352. The court finally concluded that even if the false oaths or omissions had been innocently made, "a debtor's failure to amend schedules 'can be considered reckless indifference to the truth and is tantamount to fraud.'" *Id.* (quoting *In re Green,* 268 B.R. 628, 648 (Bankr.M.D.Fla. 2001)). The debtors in *Leffingwell* had not made any attempt to amend their petition or schedules to correct the false oaths. *Id.* at 352. The court held that the false oaths and omissions were made with fraudulent intent because of the debtors' reckless indifference to the truth. *Id.*

Summary judgment is appropriate in cases in which fraudulent intent is proven by a pattern of concealment or reckless indifference to the truth. *In re Chavin,* 150 F.3d 726, 729 (7th Cir.1998). In *Chavin,* the court affirmed the lower court's decision to grant summary judgment pursuant to § 727(a)(4). *Id.* The court held that where no reasonable person could believe the debtor's stated reasons for his

false representations or omissions, no genuine issues of fact remained and summary judgment was appropriate. *Id.*

 In the present case, the Debtor failed to disclose several significant assets and transfers as previously enumerated. The Debtor is highly educated, a businessman, and understands the importance of sworn oaths from his previous litigation experience. The magnitude of the Debtor's omissions demonstrates a reckless and cavalier attitude towards his duty to disclose all assets and transfers as required by the Bankruptcy Code. Such a reckless indifference for the truth evidences fraudulent intent as required under § 727(a)(4).

The Debtor's pattern of concealment and reckless indifference for the truth as evidenced by the record warrants a denial of discharge as there are no remaining issues of fact regarding fraudulent intent. Therefore, summary judgment is appropriate in accordance with 11 U.S.C. § 727(a)(4).

### CONCLUSION

The issues presented by this Motion for Summary Judgment are whether the Debtor's discharge should be denied pursuant to 11 U.S.C. § 727(a)(2) or (a)(4). The Court finds that summary judgment is not appropriate under § 727(a)(2) because factual issues remain regarding the Debtor's intent to hinder, delay or defraud creditors through his omissions. Summary judgment is appropriate pursuant to § 727(a)(4), however, because the record clearly establishes that the Debtor knowingly made a false statement under oath with fraudulent intent regarding matters that materially relate to the bankruptcy proceeding. Consequently, the Court determines that Syngenta's Motion for Summary Judgment should be granted.

**IT IS ORDERED** that:

1. The Motion for Summary Judgment by Syngenta Seeds, Inc. is granted.

2. Nicholas W. Eigsti's discharge of debt pursuant to these bankruptcy proceedings is disallowed.

3. A separate Final Judgment shall be entered by this Court pursuant to this Order.