**In re Ernest W. SHAHID, Debtor.**

**Fred Sackett, et al., Plaintiffs.**

**v.**

**Ernest W. Shahid, Defendant.**

**Bankruptcy No. 04–30963.
Adversary No. 05–3007.**

United States Bankruptcy Court,
N.D. Florida.

Sept. 26, 2005.

Louis L. Long, Jr., Chesser & Barr, P.A., Shalimar, FL, for Plaintiffs.

Ernest W. Shahid, Destin, FL, pro se.

## ORDER DENYING DISCHARGE OF DEBTOR

MARGARET A. MAHONEY,
Bankruptcy Judge.

This matter came before the court on the plaintiffs' objection to discharge pursuant to 11 U.S.C. §§ 727(a)(3), (4) and (5). The court has jurisdiction to hear these matters pursuant to 28 U.S.C. §§ 157 and 1334 and the Order of Reference of the District Court. These are core proceedings pursuant to 28 U.S.C. § 157(b)(2) and the court has the authority to enter a final order. For the reasons indicated below, the court is denying the debtor's discharge under §§ 727(a)(3), (a)(4) and (a)(5).

### FACTS

Ernest W. Shahid, the debtor/defendant, is a former land developer. During his

years in the construction business, he developed, among other things, many condominium complexes in Destin, Florida and the nearby areas. Shahid and his wife of 63 years, Margaret Shahid, have resided for the past 24 years in one of the condos Shahid developed in Destin. The debtor testified that Mrs. Shahid bought the condo with her own money and that the condo, currently worth approximately $1.5 million, sold for less than $75,000.00 when built. One of the Shahids' sons, Ernest Shahid, Jr., also lives in the condo and has resided there for the last four years. Shahid is 84 years old and has been retired for the last 10 years. He testified that his only income is his social security income of approximately $1,000 per month. Shahid also testified that his children occasionally give him money to help him out. Shahid and wife keep their finances separate and Mrs. Shahid pays their household bills. Shahid transacts business only in cash and does not have any bank accounts. Shahid, thus, does not have any bank records. Shahid also does not keep any other financial records, such as credit card statements. The only financial records that Shahid provided the plaintiffs were copies of his income tax returns from 1999, 2000, and 2003. According to Shahid's testimony, the records he provided are the only financial records he has. He testified that some records were lost or destroyed due to hurricanes, and therefore he could not produce those records for they no longer existed.

Before Shahid retired, some of his development projects failed, resulting in him being sued by various investors, and ultimately having several judgments entered against him. The plaintiffs in this case are representatives of the estates of two of Shahid's judgment creditors. On April 14, 2004, the plaintiffs filed an involuntary bankruptcy petition against Shahid. Prior to that date, Shahid had never filed for bankruptcy. Shahid initially objected to the involuntary bankruptcy petition, but he consented to entry of the order for relief on August 27, 2004, after additional petitioning creditors joined plaintiffs' petition for involuntary bankruptcy. The court entered the order for relief on September 1, 2004. On October 11, 2004, Shahid filed his bankruptcy schedules and statement of financial affairs.

Shahid's Schedule A indicates that he does not have any real property. His Schedule B indicates that his personal property consists entirely of $50.00 cash, $300.00 worth of miscellaneous wearing appeal, one watch valued at $1,000.00, and household goods valued at $53,595.00. Shahid's Schedule C claims all $54,945.00 of his personal property as exempt. Shahid's Schedule D indicates that he has $1,469,026.36 in secured debts, all of which are judgment liens incurred between 1986 and 1994. Shahid's Schedule F lists his general unsecured debts as totaling $366,472.27. Of this unsecured total, $300,000.00 was on a land development loan, with the remaining $66,472.27 made up of credit card debt and a signature loan debt. Shahid's Schedule I shows that his current income consists solely of his $989.00 per month in social security benefits. His Schedule J shows he has current expenditures of $287.00 per month.

On February 4, 2005, the plaintiffs filed an adversary proceeding objecting to the debtor's discharge under § 727.[1] The

---

1. The plaintiffs' actually filed two adversary proceedings against the debtor, one complaint objected to the debtor's discharge under § 727 and the other complaint objected to the debtor's claim of exemptions. But, on May 3, 2005, the court dismissed the plaintiffs' adversary case concerning the debtor's exemptions, finding that complaint had been untimely filed.

plaintiffs' allege the debtor's discharge should be barred under § 727(a)(3), (4), and (5). Plaintiffs' complaint asserts that the debtor failed to list certain items in his schedules, including his income and losses from gambling, his casino credit cards, and the credit cards he holds jointly with his wife. The complaint further alleges Shahid has failed to satisfactorily explain where he gets his money to gamble, where he gets the money to pay his credit card payments, and what he did with the money he got from the $25,000.00 signature loan from Destin Bank. Lastly, the complaint alleges that Shahid has failed to provide or maintain sufficient records from which his financial condition could be determined.

Prior to trial, the court granted plaintiffs' motion for a Rule 2004 examination of Shahid and ordered him to appear and bring with him certain documents and records. Shahid appeared and took part in the examination but did not supply all the documents he was ordered to produce. For instance, Shahid was ordered to provide copies of all federal income tax returns for the years 1982 through 2004, but he only produced tax returns for the years 1999, 2000, and 2003. Shahid stated that these were the only returns he had in his possession and did not know the whereabouts of any others. Likewise, Shahid was ordered to produce credit card statements for any account he owned or used from September 1, 2000 through September 1, 2004, but he failed to produce any of the statements. Shahid testified that he could not produce the statements because he did not have any. Shahid stated it was his practice to discard the statements after he received them. Additionally, after he received notice from the court of the involuntary bankruptcy petition against him, Shahid returned some of his credit cards to the card issuers along with the involuntary bankruptcy notice. Once this was done, he stopped receiving statements on those cards. Furthermore, Shahid was ordered to provide any credit or loan application he had made after September 1, 2001, whether he was extended the credit or not. Shahid did not produce any such credit applications. However, after subpoenaing the bank records, plaintiffs got admitted into evidence, two such loan applications from Destin Bank.

The remaining documents and records the debtor was ordered to produce pertained to potential assets of the debtor. Shahid did not produce any of those documents and records because according to his testimony no such documents exist. Shahid testified that because he had none of the potential assets referenced there would be no underlying records and documents, and therefore he could not produce that which did not exist.

Shahid listed four credit card accounts on his Schedule F. During the Rule 2004 examination, Shahid produced three additional credit cards: Dillard's, BankOne Visa, and Vanguard Bank Visa. All three of these cards had the debtor's name on them, but Shahid testified the account was in Mrs. Shahid's name, with him only having a card on her account. Shahid stated that he erred in not listing these three cards because he did not realize the cards had his name on them when he created his schedules. When asked how he made the payments on his credit cards, Shahid testified that his wife made all the credit card payments.

Shahid testified that he had amassed most of his credit card debt in the year preceding the filing of the involuntary petition. Shahid listed a balance owing of $19,529.01 on his Bank of America credit card. But when asked what he purchased with the card to incur the debt, Shahid testified that he did not know what he used the card for. When questioned fur-

ther about the Bank of America card, Shahid stated he bought medicine, shirts, pants, groceries, and might have drawn some cash at the casino with the card. However, he did not produce any credit card statement to evidence what was purchased. Shahid also listed a CitiBank credit card with a balance owing of $23,262.15, an MBNA card with a balance owing of $4,651.27, and a Fleet Platinum card with a $175.79 balance. He stated these cards were used in the same manner and for about the same things as the Bank of America card was used for. Shahid stated he did not purchase any appliances or jewelry on these cards, but probably "bought shirts, pants and stuff like that." Again, no credit card statements were produced to show what purchases were actually made on the cards.

Shahid also listed a balance owing of $18,854.05 on a signature loan from Destin Bank. Shahid stated the original principle balance of the loan was $25,000.00, and that he had obtained the loan within three years of the bankruptcy filing. Shahid stated he used his social security to make payments on the loan, but had quit making payments after the involuntary petition was filed. When asked what he used the $25,000.00 loan for, Shahid stated, "[p]robably to pay something off or use it for my own personal use. I don't know. I don't itemize what I use money for on credit cards. I don't itemize." When asked what he did with the $25,000 Shahid replied that he "spent it."

Shahid admits that goes gambling in Biloxi, Mississippi once or twice a month and gambles at multiple casinos in the Biloxi/Gulfport area. Shahid has "player's

cards" at the various casinos in which he gambles.[2] The Beau Rivage casino's records, by tracking Shahid's player's card, show Shahid gambled in that casino an average of two days per month from January 1, 2002 to December 31, 2004. Furthermore, the Beau Rivage's records estimated that Shahid had net losses at the Beau Rivage of $10,309.00 in 2002, $14,100.00 in 2003, and $10,200.00 in 2004. Likewise, the Grand Casino's records estimated Shahid's net gambling losses at the Grand Casino to be $11,000.00 in 2002, $6,080.00 in 2003, and $13,351.00 in 2004. Shahid did not list any gambling losses on his statement of financial affairs. Shahid testified that he had been extended credit on his player's cards at the Grand Casino and the Beau Rivage. According to Shahid, he still owes approximately $6,200 on the Grand Casino card and approximately $3,000 on the Beau Rivage card. Shahid did not list these two casino credit cards on his bankruptcy schedules.

### LAW

One of the fundamental goals of the Bankruptcy Code is to relieve the "honest but unfortunate debtor" of his indebtedness, giving him a financial "fresh start." *Local Loan Co. v. Hunt,* 292 U.S. 234, 244–45, 54 S.Ct. 695, 78 L.Ed. 1230 (1934); *In re Haas,* 48 F.3d 1153, 1156 (11th Cir. 1995); *Equitable Bank v. Miller (In re Miller),* 39 F.3d 301, 304 (11th Cir.1994). The Supreme Court has stated:

> that a central purpose of the Code is to provide a procedure by which certain insolvent debtors can reorder their affairs, make peace with their creditors, and enjoy "a new opportunity in life and

---

**2.** Player's cards are used by casinos primarily to track a player's gambling patterns. When certain betting perimeters are satisfied, the casinos give the cardholder rewards such as complimentary or discounted dining and lodging. Additionally, the casino may allow cardholders to use their player's card for credit transactions between the player and the casino.

a clear field for future effort, unhampered by the pressure and discouragement of preexisting debt." But in the same breath that we have invoked this "fresh start" policy, we have been careful to explain that the Act limits the opportunity for a completely unencumbered new beginning to the "honest but unfortunate debtor."

*Grogan v. Garner,* 498 U.S. 279, 286–87, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991)(internal quotations and citations omitted).

▬ Given its importance, actions to deny the discharge are construed strictly against the complaining party and liberally in favor of the debtor. *Rutland v. Petersen (In re Petersen),* 323 B.R. 512, 516 (Bankr.N.D.Fla.2005). A creditor seeking to deny a debtor's discharge bears the burden of proof as to each element by a preponderance of the evidence. Fed. R.Bankr.P. 4005; *Grogan,* 498 U.S. at 287, 111 S.Ct. 654. However, once a creditor meets this initial burden, the burden shifts to the debtor to show by a preponderance of the evidence that he is entitled to a discharge. *Crews v. Stevens (In re Stevens),* 250 B.R. 750, 755 (Bankr.M.D.Fla. 2000). Thus, the debtor has the ultimate burden of persuasion, demonstrating that he is entitled to a discharge despite the evidence presented by the objecting party. *Posillico v. Bratcher (In re Bratcher),* 289 B.R. 205, 217 (Bankr.M.D.Fla.2003); *Law Offices of Dominic J. Salfi, P.A. v. Prevatt (In re Prevatt),* 261 B.R. 54, 58 (Bankr. M.D.Fla.2000).

Section 727(a) provides in pertinent part:

(a) The court shall grant the debtor a discharge, unless–

. . .

(3) the debtor has concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information, including books, documents, records, and papers, from which the debtor's financial condition or business transactions might be ascertained, unless such act or failure to act was justified under all of the circumstances of the case;

(4) the debtor knowingly and fraudulently, in or in connection with the case–

(A) made a false oath or account;

. . .

(5) the debtor has failed to explain satisfactorily, before determination of denial of discharge under this paragraph, any loss of assets or deficiency of assets to meet the debtor's liabilities;

. . .

11 U.S.C. § 727(a).

### 727(a)(3)

▬ The purpose of § 727(a)(3) is to give creditors and the bankruptcy court complete and accurate information regarding the status of a debtor's affairs and to test the completeness of the disclosure requisite to a discharge. *Grant v. Sadler (In re Sadler),* 282 B.R. 254, 263 (Bankr. M.D.Fla.2002) (citations omitted). The debtor has an "affirmative duty to 'maintain and retain' comprehensible records." *Goldberg v. Lawrence (In re Lawrence),* 227 B.R. 907, 916 (Bankr.S.D.Fla.1998). Section 727(a)(3) is meant to ensure that the trustee and creditors will have sufficient information to permit an effective evaluation of the debtor's estate, which is a condition precedent to the granting of a discharge. *Cadle Co. v. Leffingwell (In re Leffingwell),* 279 B.R. 328 (Bankr.M.D.Fla. 2002); *Neugebauer v. Senese (In re Senese),* 245 B.R. 565 (Bankr.N.D.Ill.2000). "The court has wide discretion in determining the sufficiency of records." *In re Leffingwell,* 279 B.R. at 355 (quoting *County National Bank of South Florida v. Savel (In re Savel),* 29 B.R. 854, 856 (Bankr.S.D.Fla.1983)). The court must

determine if "the books and records of the debtor are adequate to permit the court and creditors to trace the debtor's financial dealings." *Id.* While perfect record keeping is not required, the creditors examining the debtor's records "must be reasonably able to follow the debtor's business transactions, make intelligent inquiry, verify the oral statements and explanations of the bankrupt, and ascertain the present and past financial condition of the bankrupt [with] substantial completeness and accuracy." *Id.*

A creditor objecting to discharge under § 727(a)(3) has the initial burden of proving "(1) that the debtor failed to maintain and preserve adequate records, and (2) that such failure makes it impossible to ascertain the debtor's transactions." *Sadler*, 282 B.R. at 263 (quoting *Meridian Bank v. Alten (In re Alten)*, 958 F.2d 1226, 1232 (3rd Cir.1992)). If the creditor shows the debtor's records are inadequate, then the burden shifts to the debtor to justify such inadequacies. *Id.*

In the present case, Shahid kept no records of his financial affairs. Thus, he was unable to provide any documentation to the plaintiffs in response to their request for his financial records, other than three unsigned copies of tax returns. The debtor took little or no action to obtain any further documents or records. Despite Shahid's acknowledgment that the accounting firm he uses had copies of all his tax returns, he failed to request or produce copies of the all the returns requested. Likewise, Shahid did not produce any credit card statements for any of his credit cards. Even if he did not have these statements when initially ordered to produce them, he could have requested and received copies of those statements from the credit card company. Without any of these statements, the plaintiffs cannot verify what Shahid actually used his credit cards for. Instead they are left to rely solely on the debtor's uncorroborated and vague oral representations of the cards use. Additionally, Shahid did not produce any loan or credit applications as ordered. Again, he could have requested and received copies of these documents from the banks with little effort, but he did not. The plaintiffs were able to obtain two loan applications from Destin Bank, but only after using a subpoena to get them.

Based on all the evidence presented, the court finds that plaintiffs have met their burden under § 727(a)(3) of showing by a preponderance of the evidence that the defendant has failed to maintain and preserve adequate records and that such failure makes it impossible to ascertain the debtor's financial condition. The lack of records maintained and produced by Shahid leaves the plaintiffs in a position where they must speculate as to the financial history and financial condition of the debtor and compels the plaintiffs to reconstruct the debtor's financial affairs. This should not be required of creditors. *See Matter of Juzwiak*, 89 F.3d 424 (7th Cir.1996). Accordingly, the plaintiffs have met their initial burden of showing that the debtor failed to maintain and preserve adequate records, and that such failure made it impossible to ascertain the debtor's financial condition. *Turner v. Tran (In re Tran)*, 297 B.R. 817, 835 (Bankr.N.D.Fla.2003); *Alten*, 958 F.2d at 1233. Thus the burden shifts to Shahid to show his failure to maintain adequate records was justified under the circumstances. *Id.*

The Bankruptcy Code does not specify what constitutes justification for maintaining inadequate records; instead it requires the trier of fact to make that determination based on all the circumstances of the case. *Alten*, 958 F.2d at 1231.

The issue of justification depends largely on what a normal, reasonable person would do under similar circumstances. The inquiry should include the education, experience, and sophistication of the debtor; the volume of the debtor's business; the complexity of the debtor's business; the amount of credit extended to the debtor in his business; and any other circumstances that should be considered in the interest of justice.

*Id.* at 1231 (quoting *Milam v. Wilson (In re Wilson)*, 33 B.R. 689, 692 (Bankr. M.D.Ga.1983)). Depending on the debtor's sophistication and the extent of his activities, different record keeping practices are necessary. *Alten*, 958 F.2d at 1231; *see Goff v. Russell Co.*, 495 F.2d 199, 201–202 (5th Cir.1974).

■ Looking at the factors described above, the court finds the debtor was at one time a sophisticated businessman, considering the extent of Shahid's former construction and development accomplishments. But, Shahid has been retired for at least 10 years and during that time has had no regular income except social security. With no ongoing business activities and only his monthly social security check coming in as regular income during the last decade, the court does not find that Shahid's business sophistication increases the level of recordkeeping required of him. Additionally, in considering other circumstances in the interest of justice, the court fully realizes that this was an involuntary bankruptcy. Shahid did not change his recordkeeping practices or fail to keep records in anticipation of filing bankruptcy, because Shahid had no intention of filing bankruptcy, nor did he know the plaintiffs intended to file an involuntary petition against him. There is a clear distinction between Shahid's situation and that of a debtor, who having failed to preserve his financial records, voluntarily seeks the bankruptcy court's protections.

■ A debtor is not required to have a bank account, nor is he always required to keep copies of all his credit card statements and tax returns. *See Alten*, 958 F.2d at 1230. If all Shahid did was fail to have a bank account or keep copies of his credit card statements or tax returns, and had fully cooperated with the plaintiffs, the court might be inclined to conclude that he had met his burden of proof. However, copies of Shahid's credit card statements and tax returns were available to him with a reasonable effort on his part to retrieve them and he failed to put forth any effort to obtain the records. After considering all the circumstances, including Shahid's failure to fully cooperate with the plaintiffs and his failure to produce the records he could have obtained, the court finds Shahid did not sustain his burden of proving the justification of his lack of records.

■ The purpose of § 727(a)(3) is to make full financial disclosure a condition precedent to the grant of discharge in bankruptcy. Shahid admittedly did not have a bank account and conducted his financial transactions with cash, credit cards, and loans. The Bankruptcy Code does not prohibit such financial dealings, but to receive a discharge a debtor must preserve and maintain adequate records. If the debtor fails to do so, there must be some explanation. Shahid failed to maintain adequate financial records, making candid disclosure difficult if not impossible. *See Alten*, 958 F.2d at 1234. Furthermore, Shahid failed to prove any facts which were legally sufficient to justify his failure to keep records within the meaning of § 727(a)(3). *Id.* Thus Shahid's discharge will be denied under § 727(a)(3).

## 727(a)(4)

 A debtor will be denied a discharge pursuant to § 727(a)(4) if he knowingly and fraudulently made a false oath or account. 11 U.S.C. § 727(a)(4); *Sperling v. Hoflund (In re Hoflund)*, 163 B.R. 879, 882 (Bankr.N.D.Fla.1993). The plaintiff must establish the following elements by a preponderance of the evidence: (1) the debtor made a statement under oath; (2) that statement was false; (3) the debtor knew the statement was false; (4) the debtor made the statement with fraudulent intent; and (5) the statement related materially to the bankruptcy case. *Syngenta Seeds, Inc., v. Eigsti (In re Eigsti)*, 323 B.R. 778, 783–84 (Bankr.M.D.Fla.2005); *In re Perry*, 252 B.R. 541, 549 (Bankr. M.D.Fla.2000); see also *Swicegood v. Ginn*, 924 F.2d 230, 232 (11th Cir.1991); *Chalik v. Moorefield*, 748 F.2d 616 (11th Cir.1984). Deliberate omissions from schedules or the statement of financial affairs may also constitute false oaths or accounts. *Swicegood*, 924 F.2d at 232; *Chalik*, 748 F.2d at 618.

 For a false oath to be considered material, it must be demonstrated that it "bears a relationship to the bankrupt's business transactions or estate, or concerns the discovery of assets, business dealings, or the existence and disposition of his property." *Chalik*, 748 F.2d at 618 (citations omitted). Additionally, the false oath or account must be made with the requisite intent, specifically a knowing intent to defraud creditors. *Swicegood*, 924 F.2d at 232. However, actual intent may be inferred from circumstantial evidence. *Chancellor v. Martin (In re Martin)*, 239 B.R. 610, 614 (Bankr.N.D.Fla.1999) (citing *Hoflund*, 163 B.R. at 882–83).

To support their § 727(a)(4) claim, the plaintiffs rely on omissions from Shahid's schedules and statement of financial affairs. The omissions alleged by plaintiffs include Shahid's failure to list certain credit cards, his failure to list any gambling losses, his failure to list the plaintiffs' state court lawsuit against him as pending, and his failure to list any income besides his social security.

The debtor acknowledged at his Rule 2004 examination that he did not list the Grand Casino and Beau Rivage cards in his bankruptcy schedules. Shahid further stated that he owed $6,200 and $3,000 respectively on these cards. Additionally, Shahid admitted that he had three other credit cards (Dillard's, BankOne Visa, and Vanguard Bank Visa) with his name on them, that were not listed in the schedules. The debtor explained that these cards were not listed because the cards, although they had Shahid's name on them, were actually issued on Mrs. Shahid's account. Because Mrs. Shahid was the party responsible for the cards and their payment, Shahid did not know to list them.

Shahid also acknowledged that he goes gambling in Biloxi once or twice a month. Furthermore, he admits that he losses more often than he wins. The Grand Casino's records and the Beau Rivage's records support these contentions. Question 8 of the statement of financial affairs says to, "[l]ist all losses from fire, theft, other casualty or *gambling* within one year immediately preceding the commencement of this case or since the commencement of this case." (emphasis added). Despite the casino records in evidence and Shahid's admission that his gambling excursions often result in losses, he answered that he had no losses from gambling in the year prior to the commencement of the case or after the commencement of the case. This statement is clearly false.

The plaintiffs also alleged that Shahid made false oaths by not listing the state court lawsuit brought by the plaintiffs in

his response to Question 4 in the statement of financial affairs. Shahid answer to Question 4 states that he had not been a party to any suit within one year preceding the commencement of his bankruptcy case. That statement is clearly false considering the state court suit pending between Shahid and the plaintiffs has been ongoing for over a decade.

 The veracity of a debtor's bankruptcy petition, including the schedules and statement of financial affairs, is essential to the successful administration of the debtor's case. *Crews v. Stevens (In re Stevens)*, 250 B.R. 750, 754 (Bankr. M.D.Fla.2000). "Therefore, submissions 'must be accurate and reliable, without the necessity of digging out and conducting independent examinations to get the facts.'" *Id.* (quoting *Mertz v. Rott*, 955 F.2d 596, 598 (8th Cir.1992)). A debtor coming before the bankruptcy court must come clean and make full disclosure of all information relevant to the administration of his case. *Heidkamp v. Grew (In re Grew)*, 310 B.R. 445, 450–51 (Bankr. M.D.Fla.2004). It is not for the debtor to decide what is and is not relevant. *Id.* at 451. A debtor who omits important information and fails to make full disclosure, places his right to discharge in serious jeopardy. *Id.* While an isolated omission may be attributed to oversight, a pattern of omissions clearly warrants the conclusion that the omissions from the Statement of Financial Affairs and the Schedules were made with the requisite fraudulent intent. *Id.; see Grew*, 310 B.R. at 451 (incomplete, improper, or incorrect information in the debtor's schedules or statement of financial affairs may sometimes be forgiven if the debtor does not represented by an attorney or is unsophisticated). When there is a pattern of omissions, it is logical to conclude the debtor did in fact make a false oath in connection with the case. *See Hoflund*, 163 B.R. at 883.

██ After a thorough review of all the evidence of this case, the court finds that the debtor's discharge should be denied under § 727(a)(4). When a debtor signs his bankruptcy schedules and statement of financial affairs he signs them under penalty of perjury that the information contained within the documents is true and correct. Although Shahid proceeded at trial pro se, he was represented by an experienced attorney at the time he completed and filed his schedules and statement of financial affairs. Therefore his pattern of omissions and incorrect information will not be excused based on his pro se representation. While certain omissions may have been due to oversight or inadvertence, the pattern of omissions and false statements warrants the conclusion that the statements and omissions were made with the requisite fraudulent intent. *Hoflund*, 163 B.R. at 883. Thus, Shahid's discharge will be denied based on § 727(a)(4).

### 727(a)(5)

 To deny Shahid's discharge under § 727(a)(5) the plaintiffs have the initial burden of showing Shahid has failed to satisfactorily explain his loss of assets. 11 U.S.C. § 727(a)(5). Once the plaintiffs establish the basis of their objection, the burden of proof shifts to Shahid to satisfactorily explain the loss of assets. Fed. R.Bankr.P. 4005; *Chalik*, 748 F.2d at 619. "To be satisfactory, 'an explanation' must convince the judge." *Hawley v. Cement Industries, Inc. (In re Hawley)*, 51 F.3d 246, 249 (11th Cir.1995) (quoting *Chalik*, 748 F.2d at 619). "Vague and indefinite explanations of losses such as 'monies were spent' or 'lost through gambling' without document is unacceptable." *Manhattan Leasing Systems, Inc. v. Goblick (In re*

*Goblick)*, 93 B.R. 771, 775 (Bankr.M.D.Fla. 1988). "The debtor will be required to produce some kind of direct, specific evidence in order to defeat an objection [of discharge] based upon failure to explain a loss of assets." *Colonial Bank v. Wynn (In re Wynn)*, 261 B.R. 286, 304 (Bankr. M.D.Ala.2001) (quoting *Wortman v. Ridley (In re Ridley)*, 115 B.R. 731, 737 (Bankr. D.Mass.1990)).

■ The Plaintiffs have sustained their burden in establishing that Shahid has failed to account for the $25,000 loaned to him by Destin Bank. Therefore, Shahid must satisfactorily explain the loss of the money. However, he has failed to do so. Due to Shahid's inadequate record keeping, it is impossible for this court, or anyone, to accurately determine what happened to the money loaned and for what specific purpose the money was used. When asked what he did with the $25,000 Shahid testified he "spent it." When asked what he used the money for, Shahid testified that he used the money "[p]robably to pay something off or use[d] it for my own personal use … I don't itemize." In addition to these vague and evasive answers, Shahid did not have any documentation, such as receipts or invoices, in which one could accurately account for the money. Accordingly, Shahid's discharge will be barred under § 727(a)(5).

THEREFORE, IT IS ORDERED that the objection of plaintiffs to the discharge of Ernest W. Shahid pursuant to 11 U.S.C. § 727(a)(3), (4) and (5) is SUSTAINED and the discharge of debts of Ernest W. Shahid is DENIED in its entirety.